No. 15-_____

_____

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

_____

Smartflash LLC and Smartflash Technologies Limited,

*Plaintiffs-Appellees*,

v.

Apple Inc.,

*Defendant-Appellant*.

_____

Appeal From The United States District Court
For The Eastern District Of Texas In Case No. 6:13-cv-447-JRG-KNM
Judge J. Rodney Gilstrap

_____

**PRINCIPAL BRIEF FOR APPELLANT APPLE INC.**

_____

James R. Batchelder
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, California  94303-2284
(650) 617-4000

Mark A. Perry
 *Principal Attorney*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
(202) 955-8500
MPerry@gibsondunn.com

Blaine H. Evanson
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California  90071-3197
(213) 229-7000

*Attorneys for Apple Inc.*

# CERTIFICATE OF INTEREST

Counsel for Apple Inc. certifies the following:

1.     The full name of every party or amicus represented by me is:

     Apple Inc.

2.     The name of the real party in interest (if the party in the caption is not the real party in interest) represented by me is:

     N/A

3.     All parent corporations and any publicly held companies that own ten percent or more of the stock of the party represented by me are:

     None.

4.     The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or are expected to appear in this Court are:

| | |
|---|---|
| **Gibson, Dunn & Crutcher LLP** | **Ropes & Gray LLP** |
| Mark A. Perry | James R. Batchelder |
| Blaine H. Evanson | Douglas H. Hallward-Driemeier |
| Robert A. Vincent | Ching-Lee Fukuda |
| | Kevin J. Post |
| **Gilliam & Smith LLP** | Sharon Lee |
| Melissa Richards Smith | Megan F. Raymond |
| | Daniel W. Richards |
| **Albritton Law Firm** | Lauren N. Robinson |
| Eric M. Albritton *(terminated)* | Josef B. Schenker |
| Shawn A. Latchford *(terminated)* | Daniel Keese *(terminated)* |

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................1

STATEMENT OF JURISDICTION.......................................................................3

STATEMENT OF THE ISSUES............................................................................3

STATEMENT OF THE CASE ...............................................................................3

SUMMARY OF ARGUMENT ..............................................................................9

STANDARD OF REVIEW ..................................................................................10

ARGUMENT .......................................................................................................11

I.    Congress Intended Instituted CBM Review Proceedings
      to Take Priority over Litigation in Article III Courts.........................11

II.   The AIA's Four-Factor Test Favors a Stay of Litigation
      Pending CBM Review of the Asserted Claims ...................................14

      A.    The PTAB's Forthcoming Decisions Will Likely
            Resolve All of the Issues in This Case ....................................15

      B.    The Stage of This Litigation Does Not Preclude
            Issuance of a Stay.....................................................................18

      C.    Smartflash Would Suffer No Prejudice from a
            Stay, and Apple Would Not Gain Any Clear
            Tactical Advantage ..................................................................21

      D.    The PTAB's Forthcoming Decisions Will Likely
            Eliminate the Burden of Further Litigation in This
            Case Altogether........................................................................23

CONCLUSION ....................................................................................................25

ADDENDUM A:  Memorandum Opinion and Order Denying Apple's Motion to Stay Litigation Pending Covered Business Method Review, *Smartflash LLC v. Apple Inc.*, Dkt. 558 (E.D. Tex. May 29, 2015)

ADDENDUM B:  Section 18 of the Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011)

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can.*,
  687 F.3d 1266 (Fed. Cir. 2012) ...................................................................17

*Benefit Funding Sys. LLC v. Advance Am. Cash Advance Ctrs. Inc.*,
  767 F.3d 1383 (Fed. Cir. 2014) ...................................................................11

*Bros Inc. v. W.E. Grace Mfg. Co.*,
  320 F.2d 594 (5th Cir. 1963) ......................................................................23

*ePlus, Inc. v. Lawson Software, Inc.*,
  760 F.3d 1350 (Fed. Cir. 2014) .............................................................. 14, 16

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
  721 F.3d 1330 (Fed. Cir. 2013) .............................................................. 14, 16

*In re Cuozzo Speed Techs., LLC*,
  778 F.3d 1271 (Fed. Cir. 2015) ...................................................................17

*In re Morgan Stanley*,
  417 F. App'x 947 (Fed. Cir. 2011) ...............................................................21

*In re Swanson*,
  540 F.3d 1368 (Fed. Cir. 2008) ...................................................................18

*Mendenhall v. Barber-Greene Co.*,
  26 F.3d 1573 (Fed. Cir. 1994) .....................................................................23

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
  134 S. Ct. 1962 (2014)................................................................................20

*SAP Am., Inc. v. Versata Dev. Grp., Inc.*,
  2013 WL 5947661 (P.T.A.B. Jan. 9, 2013).................................................18

*Ultratec, Inc. v. Sorenson Commc'ns, Inc.*,
  2015 WL 2248437 (W.D. Wis. May 13, 2015).................................. 19, 21, 25

*Versata Software, Inc. v. Callidus Software, Inc.*,
  771 F.3d 1368 (Fed. Cir. 2014) .............................................................. 23, 24

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
   759 F.3d 1307 (Fed. Cir. 2014) .................................... 10, 12, 15, 16, 18, 21, 24

### Statutes

28 U.S.C. § 1331 .................................................................................3

28 U.S.C. § 1338(a) ............................................................................3

35 U.S.C. § 101 ............................................................... 1, 2, 6, 7, 12, 16, 17

35 U.S.C. § 326(11) ............................................................................6

AIA § 18(a)(1) ...................................................................................6

AIA § 18(b) ............................................................... 3, 4, 6, 7, 10, 11, 13, 14, 22, 25

AIA § 18(b)(1) ...................................................................................1

AIA § 18(b)(1)(A) .............................................................................15

AIA § 18(b)(1)(B) .............................................................................18

AIA § 18(b)(1)(C) .............................................................................21

AIA § 18(b)(1)(D) .............................................................................23

AIA § 18(b)(2) ............................................................................. 3, 10

### Other Authorities

157 Cong. Rec. 3416 (2011) (remarks of Sen. Schumer) .......................................11

157 Cong. Rec. S1053-02 (2011) (remarks of Sen. Schumer) ...............................11

157 Cong. Rec. S1364 (2011) (remarks of Sen. Schumer) ...................................12

157 Cong. Rec. S1379 (2011) (remarks of Sen. Kyl) .................................... 10, 12

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, counsel for Apple states that no other appeal in or from the same civil action or proceeding in the lower court or body was previously before this Court or another appellate court.

The cases known to counsel as pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal are:

1. *Smartflash LLC v. Samsung Elecs. Co.*, No. 15-____ (Fed. Cir.).

2. *Smartflash LLC v. Samsung Elecs. Co.*, No. 6:13-cv-448-JRG-KNM (E.D. Tex. filed May 29, 2013).

3. *Smartflash LLC v. Google, Inc.*, No. 6:14-cv-435-JRG-KNM (E.D. Tex. filed May 7, 2014).

4. *Smartflash LLC v. Amazon.com, Inc.*, No. 6:14-cv-992-JRG-KNM (E.D. Tex. filed Dec. 29, 2014).

5. *Smartflash LLC v. Apple Inc.*, No. 6:15-cv-145-JRG-KNM (E.D. Tex. filed Feb. 25, 2015).

## INTRODUCTION

The America Invents Act ("AIA") created the Transitional Program for Covered Business Method Patents ("CBM"), to be administered by the Patent and Trial Appeal Board ("PTAB"). The statute also reflects Congress's direction that, where the PTAB has instituted CBM review proceedings that will substantially streamline the issues in litigation, Article III courts should enter a stay to give priority to the PTAB proceedings. *See* AIA § 18(b)(1).

Here, the PTAB has instituted CBM review proceedings on *all* of the patent claims that plaintiff-appellee Smartflash asserted against Apple Inc. at trial, on the grounds that these claims are *more likely than not* directed towards subject matter that is not patent-eligible under 35 U.S.C. § 101. A final determination by the PTAB that the asserted claims of Smartflash's patents are ineligible under Section 101 would require entry of judgment for Apple and moot the dozen or more unresolved issues awaiting decision in the district court. The instituted CBM review proceedings will not merely narrow or streamline this litigation—the PTAB's eligibility determination is likely to end it, once and for all.

The district court recognized the significance of the CBM review proceedings and that the PTAB's decision could be dispositive of the litigation. Indeed, the court stayed similar actions brought by Smartflash, asserting the same patents, against Google and Amazon. Yet it nonetheless refused to stay this action

1

against Apple (as well as another similar action pending against Samsung), principally on the ground that the case against Apple had already gone to trial and the court's Section 101 summary judgment decision had supposedly "diminishe[d] the role the PTAB will play" in the CBM proceedings.  A12–13.  Ironically, and unfairly, Google and Amazon are benefiting from a stay based on the results of CBM petitions that Apple and Samsung filed.

There is no question that if the Patent and Trademark Office ("PTO") cancels the claims on which the PTAB has instituted CBM review, Smartflash will be unable to assert them against any of the defendants.  The district court's differential treatment of the four defendants against whom Smartflash has asserted the same patents—granting the stay as to two, and denying it as to two others—was unlawful, arbitrary, and an abuse of discretion.  The PTAB's final determination will streamline the proceedings in each and every case, regardless of the current procedural posture, and the propriety of a stay should not turn on the happenstance that Apple and Samsung were assigned trial dates before Google and Amazon.

Cancellation of the claims asserted by Smartflash would end this case in its entirety and avoid wasting valuable judicial resources necessary to decide the significant, complex post-trial issues remaining unresolved below, and any resulting appeal before this Court.  These substantial benefits can be obtained

*without* any prejudice to Smartflash, a non-practicing entity that does not compete with Apple. This Court should therefore reverse the district court's decision and order a stay of judicial proceedings with respect to all defendants against which Smartflash has asserted these patents, including Apple.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this patent infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has jurisdiction over the district court's denial of Apple's stay motion under Section 18(b)(2) of the Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011).

## STATEMENT OF THE ISSUES

The PTAB has instituted covered business method review proceedings with respect to all of the claims asserted against Apple at trial. The district court granted a stay under Section 18(b) of the AIA to two other defendants against whom Smartflash has asserted these same patents, but denied a similar stay to Apple and another defendant. The question presented is whether the district court erred in refusing to stay the judicial proceedings against Apple pending completion of the PTAB proceedings.

## STATEMENT OF THE CASE

1. Smartflash filed this patent infringement action against Apple on May 29, 2013 (A54–70), and asserted four claims against Apple at trial: claim 32 of U.S. Patent No. 8,118,221, claim 13 of U.S. Patent No. 7,334,720, and claims 26 and 32

3

of U.S. Patent No. 8,336,772.  A71–72.  Trial was held in February 2015, and the jury rendered its verdict on February 24, 2015, finding that Apple infringed all four claims and awarding Smartflash over $500 million.  A76–80.  The district court has not yet entered a final judgment, as it "prefers to resolve all post-trial issues, including motions under Rule 50 and 59, before entering a final judgment."  A393–94 (emphasis omitted).  The parties are currently briefing post-trial motions, which the district court is set to hear on July 1, 2015.  *Ibid.*

On April 23, 2015, prior to the filing of any post-trial motions, Apple filed a motion under Section 18(b) of the AIA for a stay of all proceedings in this action pending the completion of CBM review proceedings on the four claims asserted at trial.  Dkt. 546.[1]  Apple also sought, in the alternative, a stay of entry of final judgment until completion of the relevant CBM review proceedings.  *Id.* at 15.  On May 29, 2015, the district court denied Apple's stay motion.  A1–23.  On June 1, 2015, Apple filed a notice of appeal of the district court's order denying its stay motion.  A50.

2.  The patents-in-suit purport to "cover a portable data carrier for storing data and managing access to the data via payment information and/or use status rules" and "a computer network (i.e., a server network) that serves data and

---

[1]  Unless otherwise indicated, all "Dkt." references are to the district court docket in this action, Case No. 6:13-cv-447-JRG-KNM (E.D. Tex.).

manages access to data by, for example, validating payment information."  A57. The district court agreed that these broad claims are directed to the abstract idea of "conditioning and controlling access to data based on payment," but determined that the patents transform that idea.  A98; A102–03.  However, one of the two supposedly transformative features ("distinct memory types") is not found in the four claims ultimately asserted at trial, and the named inventor testified that the other ("evaluation of data using rules") was not his invention.  *See* A102–03; *see also* A232 (testimony of Mr. Racz).

Smartflash has brought nearly identical lawsuits against Samsung, Google, and Amazon.  *See Smartflash LLC v. Samsung Elecs. Co.*, No. 6:13-cv-448-JRG-KNM (E.D. Tex.); *Smartflash LLC v. Google, Inc.*, No. 6:14-cv-435-JRG-KNM (E.D. Tex.); *Smartflash LLC v. Amazon.com, Inc.*, No. 6:14-cv-992-JRG-KNM (E.D. Tex.).  The district court selected the suit against Apple to proceed first to trial.

3. Between late March and early April 2014, Apple filed twelve petitions for CBM review—two for each patent—challenging all thirty-two claims then asserted.  Apple subsequently filed additional petitions for CBM review in October and November 2014.  Apple's petitions challenged Smartflash's patents on a variety of grounds, including that the claims were ineligible under 35 U.S.C. § 101. In September 2014, Samsung also filed petitions to institute CBM review

proceedings against several of Smartflash's patent claims, including claim 32 of the '221 patent and claim 13 of the '720 patent, as ineligible under Section 101.

As a result of Apple's and Samsung's petitions, the PTAB has now instituted CBM review proceedings with respect to all four claims asserted at trial, having decided that the claims are more likely than not ineligible under Section 101. The PTAB instituted CBM review proceedings against claim 32 of the '221 patent on March 30, 2015, and against claim 13 of the '720 patent on April 2, 2015, with oral argument in both proceedings set for October 29, 2015. A334–53 ('221 patent); A354–72 ('720 patent). The PTAB must issue a final written decision on claim 32 of the '221 patent by March 30, 2016, and on claim 13 of the '720 patent by April 4, 2016. 35 U.S.C. § 326(11); *see* AIA § 18(a)(1). The PTAB instituted CBM review proceedings against claims 26 and 32 of the '772 patent on May 28, 2015, with oral argument set for January 6, 2016. A373–92. The PTAB must issue a final written decision on these claims by May 30, 2016. 35 U.S.C. § 326(11); *see* AIA § 18(a)(1).

4. On April 3, 2014, Apple filed a motion to stay all proceedings in this action under Section 18(b) of the AIA pending completion of CBM review. Dkt. 121. The district court denied this stay motion on July 8, 2014, without prejudice, largely on the grounds that the PTAB had not yet decided whether to institute CBM review proceedings. A281–91.

On April 23, 2015, after the PTAB had instituted CBM review proceedings with respect to two of the four asserted claims (claim 32 of the '221 patent and claim 13 of the '720 patent, *see* A334–53; A354–72), Apple again sought a stay under Section 18(b) of the AIA.  Dkt. 546.  Samsung, Google, and Amazon each also moved for stays in their respective cases.  *See* No. 6:13-cv-448-JRG-KNM (E.D. Tex.), Dkt. 499; No. 6:14-cv-435-JRG-KNM (E.D. Tex.), Dkt. 155; No. 6:14-cv-992-JRG-KNM (E.D. Tex.), Dkts. 36, 37.  On May 28, 2015, while Apple's stay motion was pending, the PTAB instituted CBM review proceedings of the remaining two asserted claims (claims 26 and 32 of the '772 patent).  *See* A373–92.

5. The district court again denied Apple's stay motion.  A1–23.  The primary basis for the court's decision was that trial "has already taken place." A13.  In granting a stay of the actions against Google and Amazon, the district court acknowledged that the PTAB decisions could have a significant impact on the viability of Smartflash's claims and would potentially reduce the burden of litigating those actions.  *See* A42; A45.  The court, however, refused to stay this case largely because it had already expended substantial resources in the litigation (A22), even though cancellation of the asserted claims on Section 101 grounds would permanently end this litigation, moot the pending complex post-

trial motions involving approximately a dozen dispositive issues, and remove the need for a complex appeal.

The district court also found that "there is little evidence that Smartflash would suffer undue prejudice from a stay," yet it nevertheless held that the factor weighed against a stay because it believed that Apple would gain a tactical advantage, as it "delay[ed] its petitions for seventeen months" and thus has had "multiple opportunities to challenge the § 101 validity of Smartflash's patents in two separate forums." A19–20.

6.  The district court also denied Samsung's stay motion for largely the same reasons that it had denied Apple's motion.  *See* A24–31.  Samsung has appealed the district court's denial of a stay to this Court.  *See Smartflash LLC v. Samsung Elecs. Co.*, No. 15-____ (Fed. Cir.).

The district court, however, *granted* Google's and Amazon's stay motions pending completion of the very same CBM review proceedings that Apple and Samsung invoked as a basis for their stay motions (and that were the product of petitions filed by Apple and Samsung, not Google or Amazon).  *See* A36–45.  In staying the action against Google, the court expressly acknowledged the potential that the PTAB's decision on the asserted claims "is likely to eliminate the need for further litigation."  A41.  The district court further determined that a stay pending CBM review presents an "opportunity ... to meaningfully reduce the overall

burden" of litigation, and held that this factor favored a stay.  A42.  Similarly, in staying the action against Amazon, the court held that a stay pending CBM review offers "[s]ubstantial opportunities ... for cost-savings and issue simplification."  A45.

## SUMMARY OF ARGUMENT

**I.**  Congress created the statutory stay provision in the AIA in order to give priority to decisions by the PTAB over litigation in Article III courts.  A stay is particularly important in cases like the present, where the instituted CBM proceedings will more likely than not end the entire action.  The district court's disparate treatment of the four defendants in virtually identical litigation, staying the litigation as to two but allowing the cases to proceed as to the other two, highlights the unfairness of the court's decision.

**II.**  A correct application of the AIA stay factors warrants issuance of a stay here.  A stay would clearly simplify the issues in question and streamline proceedings because the PTAB has already determined that all four claims asserted at trial are more likely than not ineligible.  The stage of the litigation does not preclude issuance of a stay, because although trial has already taken place, there remain at least a dozen complex issues to be resolved in post-trial motions, which will result in either a new trial or a complex appeal.  As the district court found, there would be no prejudice to Smartflash from a stay, because it does not practice

the patents or compete with Apple.  And a stay would unquestionably reduce the burden of litigation on the parties and the court, because if the PTAB deems the asserted claims ineligible and the PTO cancels the claims, the post-trial motions and potential appeal will all be moot.  The district court's contrary determination was erroneous and constitutes reversible error.

## STANDARD OF REVIEW

Although this Court has not conclusively determined what standard of review applies to orders granting or denying stays under Section 18(b) of the AIA, it has acknowledged that "the only standard [of review] mentioned in the statute is *de novo* review." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1310 (Fed. Cir. 2014); *see* AIA § 18(b)(2) (providing that this Court "shall review the district court's decision [on such a motion] to ensure consistent application of established precedent, and such review *may be de novo*") (emphasis added); 157 Cong. Rec. S1379 (remarks of Sen. Kyl) ("whether or not every case is reviewed de novo, the court of appeals cannot simply leave the stay decision to the discretion of the district court and allow different outcomes based on the predilections of different trial judges").

The particular circumstances of this case warrant this Court's exercise of its authority "to conduct more searching review of decisions to stay pending CBM review." *Benefit Funding Sys. LLC v. Advance Am. Cash Advance Ctrs. Inc.*, 767

F.3d 1383, 1385 (Fed. Cir. 2014). The district court's ruling—which denies a stay to Apple (and Samsung) despite recognizing the potential significance of the CBM review proceedings in staying the actions against Google and Amazon—is based primarily on an undue emphasis on the stage of litigation in the district court, and an improper consideration of when Apple sought CBM review. The result is an arbitrary ruling that frustrates the intent of Congress in creating the CBM review process and the Section 18(b) stay provision.

## ARGUMENT

### I. Congress Intended Instituted CBM Review Proceedings to Take Priority over Litigation in Article III Courts

The CBM review process created by the AIA is designed to be used "instead of, rather than in addition to, civil litigation." 157 Cong. Rec. 3416 (2011) (remarks of Sen. Schumer). Litigation places a "substantial burden" on the courts, and Congress intended to relieve that burden through CBM review. *Ibid.* And to further the goals of CBM review, Congress created the statutory stay provision under Section 18(b), which "places a very heavy thumb on the scale in favor of a stay." 157 Cong. Rec. S1053-02 (2011) (remarks of Sen. Schumer).[2]

Indeed, "[s]ince the entire purpose of the transitional [CBM] program at the PTO is to reduce the burden of litigation, it is nearly impossible to imagine a

---

[2] For the convenience of the Court, the full text of Section 18 of the AIA is reproduced in Addendum B at the end of this brief.

scenario in which a district court would not issue a stay." *Ibid.*; *see also* 157 Cong. Rec. S1364 (2011) (remarks of Sen. Schumer) (noting expectation that "if a proceeding against a business method patent is instituted, the district court would institute a stay of litigation unless there were an extraordinary and extremely rare set of circumstances not contemplated in any of the existing case law related to stays pending reexamination"); 157 Cong. Rec. S1379 (2011) (remarks of Sen. Kyl) ("It is expected that district judges will liberally grant stays of litigation once a proceeding is instituted.… The case for a stay is particularly pronounced in a section 18 proceeding, given the expectation that most if not all true business-method patents are abstract and therefore invalid.").

The grounds for a stay are particularly compelling where, as here, the PTAB has instituted CBM review proceedings with respect to *all* asserted claims, such that the PTAB's final determination on patent eligibility could completely moot the other issues in the litigation. Indeed, the PTAB's decision to institute proceedings of all asserted claims means its final determination will *likely* moot the *entire* litigation, because in instituting proceedings, the PTAB determined the claims being reviewed are "more likely than not … unpatentable." *VirtualAgility*, 759 F.3d at 1313 (citations omitted). (To date, the PTAB has deemed ineligible *every* claim for which it has instituted CBM review on Section 101 grounds. *See* Dkt. 546, Ex. M.)

Apple agrees that a stay of Smartflash's action against Samsung under Section 18(b) of the AIA is warranted. For many of the same reasons, nothing in the AIA precludes a stay of proceedings where a trial has already taken place. The fact that trial has already occurred does not mean the case is over, and it certainly does not mean that the PTAB's final determination will not streamline the issues in the case. Apple has filed four motions for post-trial relief on the grounds that, *inter alia*, the asserted patents are ineligible, invalid, and not infringed; that any infringement was not willful; and that the damages verdict cannot stand. Dkts. 547, 548, 549, 550. Smartflash has moved for post-trial relief of enhanced damages, attorneys' fees and costs, and a permanent injunction. Dkt. 551. The district court has not resolved any of these hotly contested motions, which present at least a dozen substantial legal issues.

Even if the district court were to uphold the jury's verdict, in whole or in part, and enter final judgment against Apple, there will be an appeal (and potentially a cross-appeal) on these issues. Depending on the district court's rulings, the parties are likely to bring important issues of claim construction, invalidity, willfulness, and damages to this Court for decision. All of these proceedings will be a waste of the judiciary's and parties' resources if (as is more likely than not) the PTO ultimately cancels the asserted claims. Contrary to the district court's suggestion (A23 n.14), there would be no retrial in the event of a

cancelation by the PTO.  The asserted patents would be ineligible as to the world, and any judgment against Apple would be reversed.  *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1338–40 (Fed. Cir. 2013); *ePlus, Inc. v. Lawson Software, Inc.*, 760 F.3d 1350, 1356–57 (Fed. Cir. 2014).

This waste of resources is directly contrary to the intended purpose of CBM review proceedings:  to curb costly, wasteful litigation by allowing the PTAB to make the first-order determination on claim eligibility.  The instituted CBM review proceedings offer the prospect of entirely mooting this action and rendering unnecessary any further proceedings in either the district court or this Court.  This is precisely the situation in which Congress intended district courts to issue a stay under Section 18(b).

## II. The AIA's Four-Factor Test Favors a Stay of Litigation Pending CBM Review of the Asserted Claims

Section 18(b)(1) of the AIA provides four factors for courts to consider in determining whether to issue a stay pending the completion of CBM review proceedings.  The district court's conclusion that a stay was unwarranted was premised on replacing these factors with what amounts to a *per se* rule against post-trial stays under Section 18(b).  Moreover, the district court focused on an irrelevant consideration (a perceived lack of diligence on Apple's part in filing petitions for CBM review), rather than the obvious efficiency that would be gained by staying this action.  Under a proper application of the Section 18(b) stay factors,

the district court should have stayed proceedings for *all* defendants, and its refusal to do so was reversible error.

### A.    The PTAB's Forthcoming Decisions Will Likely Resolve All of the Issues in This Case

The first factor, "whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial" (AIA § 18(b)(1)(A)), favors a stay because the PTAB has already determined that all four claims asserted at trial are more likely than not ineligible.  The PTAB's forthcoming final determinations on these asserted claims will thus likely completely eliminate all issues in this case, and obviate any further proceedings either in the district court or on appeal to this Court.  As such, this critical factor could not more strongly favor a stay.

As this Court has explained, a CBM review that "could dispose of the entire litigation" may result in "the ultimate simplification of issues." *VirtualAgility*, 759 F.3d at 1314.  And in this circumstance, the first factor "weighs heavily in favor of granting the stay." *Ibid.*  Indeed, in staying the substantially similar litigation against Amazon, the district court recognized that the PTAB's forthcoming decisions on the eligibility of the asserted claims offer a "[s]ubstantial opportunit[y] ... for cost-savings and issue simplification." A45.  The same is true with respect to this action (as well as the actions against Samsung and Google), as a ruling against Smartflash in the pending CBM reviews would bring to a halt its litigation against all of these defendants.

The district court reasoned that there was "nothing left to simplify" as to Apple because it had "already borne the burden of issuing reasoned rulings on the § 101 issues" and the case had already been tried to a jury. A12. But the fact that the district court had denied summary judgment on Section 101 grounds does not mean that the PTAB's rulings would not "simplify the issues in question." As this Court made clear in *VirtualAgility*, this first factor is geared towards the overlap between the CBM review proceedings and the issues in the litigation. *See* 759 F.3d at 1313–14. Here, the overlap is particularly significant, given the institution of CBM review proceedings over *all* of the asserted claims.

Indeed, it is undisputed that if the PTO cancels the claims, judgment will be entered for Apple and this entire litigation would immediately end. *See Fresenius*, 721 F.3d at 1338–40; *ePlus*, 760 F.3d at 1356–57. That would fundamentally streamline the litigation, because the dozen or so remaining issues before the district court on post-trial motions would be mooted. Moreover, without a stay, and assuming the district court proceeds to enter judgment against Apple, Apple would appeal the substantial issues presented in its post-trial motions, and Smartflash could well cross-appeal. The parties would be forced to litigate those issues on appeal, even though the PTAB's final determination could moot the entire case, including the appeal.

The district court also reasoned that the CBM review proceedings would not simplify the issues because "only § 101 issues have been raised at the PTAB," which according to the court "greatly diminishe[d] the role the PTAB will play" as it will be addressing "the same question of law on the same statutory grounds." A12–13. This erroneous conclusion is based on a misunderstanding of the nature of the proceedings before the PTAB, which is engaging in a Section 101 analysis distinct from the Section 101 analysis the district court conducted.

For example, the tribunals apply different claim construction standards. *See In re Cuozzo Speed Techs., LLC*, 778 F.3d 1271, 1281 (Fed. Cir. 2015) (affirming that the PTAB applies the broadest reasonable interpretation standard). And claim construction is "often necessary" to the Section 101 analysis because the analysis "requires a full understanding of the basic character of the claimed subject matter." *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012). These different constructions could impact the Section 101 analysis here, where the district court interpreted the term "access rule" differently than the PTAB did, and then based its Section 101 conclusion in part on the supposedly transformative nature of access rules. *Compare* A315–17, *with* A339–40; *see also* A102–03. And because different standards may apply in the two fora, the well-established principle that the PTO is not "bound by a court's decision upholding a patent's validity" because "considering an issue [of validity] at the

district court is not equivalent to the PTO having had the opportunity to consider it" would apply here. *In re Swanson*, 540 F.3d 1368, 1377–78 (Fed. Cir. 2008).[3]

If the PTAB determines that the asserted claims are directed towards patent-ineligible subject matter—a prospect that it has already found is more likely than not—that will lead to cancellation of those claims, and the "ultimate simplification" of this case (*VirtualAgility*, 759 F.3d at 1314), without the need for further proceedings before the district court or this Court.

### B.    The Stage of This Litigation Does Not Preclude Issuance of a Stay

The second factor, "whether discovery is complete and whether a trial date has been set" (AIA § 18(b)(1)(B)), does not "weigh heavily" against a stay, as the district court concluded (A17).  There is no *per se* rule against post-trial stays, as the district court's analysis of this factor erroneously suggests.  *See* A14–17.

The relevant time period for assessing the stage of litigation is when the stay motion was filed.  *VirtualAgility*, 759 F.3d at 1317 ("Generally, the time of the

---

[3] Because the PTAB does not consider a district court judgment as having preclusive effect until *after* the Federal Circuit resolves any appeal, all of the CBM review proceedings will continue even if judgment is entered against Apple.  *See SAP Am., Inc. v. Versata Dev. Grp., Inc.*, 2013 WL 5947661, at *8–9 (P.T.A.B. Jan. 9, 2013).  Moreover, issue preclusion based on a judgment in this case could only apply, if at all, to *Apple's* PTAB proceedings.  Other parties, including Samsung, have separately filed CBM petitions against these patents; those proceedings will be finally decided in the PTAB regardless of whether the district court enters judgment in this case.

motion is the relevant time to measure the stage of litigation"). When Apple moved for a stay, the parties had yet to file any post-trial briefing, which was a significant undertaking for all involved. *See* A13 n.10 (noting that "[o]ver 200 pages of post-trial briefing" have been filed). And while the bulk of post-trial briefing has now been completed, the parties and the district court still must prepare for the July 1, 2015 hearing on the post-trial motions, which raise numerous complex issues, including Smartflash's request for an award of treble damages (and thus a total damages award exceeding $1.5 billion) and a permanent injunction. *See* A393–94. The district court then must issue a ruling addressing all of these issues, which will either require a retrial or lead to complex appellate proceedings before this Court. Thus, despite the fact that trial has already occurred, there are significant efficiencies to be gained by staying this action.

Another district court recently recognized this very point in granting a post-trial stay pending completion of *inter partes* review and appeal of the PTAB's decisions. A post-trial stay was warranted there "because final cancellation of the asserted claims would moot all of plaintiffs' infringement claims and avoid wasting judicial resources needlessly in resolving the post-trial motions and any resulting appeals." *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, 2015 WL 2248437, at *1 (W.D. Wis. May 13, 2015). The same is true here.

The district court also concluded that the second factor weighed against a stay because it believed that Apple failed to "act[] with reasonable diligence in filing petitions raising its § 101 invalidity defense." A16. But this purported lack of "diligence" has nothing to do with whether a stay would serve the interests of judicial economy at that stage of litigation. Indeed, although Amazon has not filed *any* CBM petitions against the asserted patents, and Google filed its first petitions in May 2015, the district court nonetheless granted their stay motions.

The district court's engrafting of an unwritten "diligence" requirement onto the AIA's statutory stay factors—which it applied to Apple and Samsung (but not Google and Amazon)—was entirely unwarranted. Significantly, the PTAB did not find that Apple's petitions were untimely in any respect under the AIA; rather, it considered them and instituted CBM review as a result. The district court's creation of an arbitrary and ambiguous non-statutory deadline—and its decision to second-guess the PTAB's determination of the timeliness of Apple's petitions— warrants reversal. *Cf. Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1967 (2014).

In any event, regardless of when Apple petitioned for CBM review, the fact remains that the PTAB instituted CBM review proceedings, and is likely to cancel all of the asserted claims, which would "avoid wasting judicial resources

needlessly in resolving the post-trial motions and any resulting appeals." *Ultratec*, 2015 WL 2248437, at *1.

### C.    Smartflash Would Suffer No Prejudice from a Stay, and Apple Would Not Gain Any Clear Tactical Advantage

The third factor, "whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party" (AIA § 18(b)(1)(C)), supports issuance of a stay because Smartflash will not suffer any undue prejudice from a stay, Apple may be unduly prejudiced without a stay, and a stay would result in no tactical advantage for Apple.

The district court correctly found that "there is little evidence that Smartflash would suffer undue prejudice from a stay," as "Smartflash does not compete with Apple and does not risk loss of market share." A20; *see*, *e.g.*, *In re Morgan Stanley*, 417 F. App'x 947, 950 (Fed. Cir. 2011) (patentee that "does not make or sell any product that practices the claimed invention … is not in need of quick resolution of this case" on the basis that "its position in the market is threatened"). Any potential harm to Smartflash due to delay would be easily remedied with an award of statutory interest in the event it ultimately prevails in this action. Moreover, Smartflash's own delay in bringing this infringement action undermines any claim of undue prejudice, as does its failure to seek a preliminary injunction. *VirtualAgility*, 759 F.3d at 1319–20 (failure to move for a preliminary injunction is a relevant fact that "weigh[s] against [a patentee's] claims that it will be unduly

21

prejudiced by a stay"). In fact, as the district court noted, Smartflash waited over five years after the '720 patent issued before initiating this action against Apple. A19.

Yet despite these findings, the district court nonetheless determined that this factor weighed against a stay because Apple would supposedly gain a "clear tactical advantage" because it purportedly "delay[ed] its petitions for seventeen months" and thus "ha[d] multiple opportunities to challenge the § 101 validity of Smartflash's patents in two separate forums." A19–20. This was error. CBM review proceedings necessarily create an alternative opportunity to challenge the eligibility or validity of a claim—indeed, that is the entire point of the creation of the CBM program. The district court's reasoning would lead to the nonsensical result that this factor weighs against a stay whenever a defendant petitions for CBM review. Congress obviously thought otherwise in enacting Section 18(b) of the AIA, and the court's ruling here directly frustrates the intent of Congress to encourage defendants facing infringement suits to avail themselves of the more efficient proceedings before the PTAB *and* obtain a stay of district court litigation.

The court's reliance on Apple's purported delay in filing its petitions sets an arbitrary and uncertain line as to when a defendant must file a CBM review petition if it desires to seek a stay of district court litigation. Indeed, this Court has previously found that this factor favored a stay despite a similar timeline. *See*

*Versata Software, Inc. v. Callidus Software, Inc.*, 771 F.3d 1368, 1370, 1374–75 (Fed. Cir. 2014) (holding that prejudice factor "strongly favor[ed] a stay" even though the defendant had filed CBM review petitions over a year after the plaintiff initiated the infringement action), *vacated as moot*, 780 F.3d 1134 (Fed. Cir. 2015).

Apple faces the potentially significant competitive disadvantage of having to continue litigating this case both in the district court and on appeal, while competitors like Google and Amazon—whose cases have been stayed on the basis of CBM review proceedings initiated by Apple and Samsung—will enjoy the benefit of the PTAB's determinations in those proceedings.  The asserted claims should be eligible against all or none, and Apple should not suffer prejudice merely because its case was arbitrarily resolved first.  *See Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1583 (Fed. Cir. 1994) (noting that "when the rest of the industry is not impeded by the patents, it seems manifestly *unjust* to rely merely on 'judicial economy' as *justification* for holding appellants liable and impairing their ability to compete"); *see also Bros Inc. v. W.E. Grace Mfg. Co.*, 320 F.2d 594, 610 (5th Cir. 1963) (a patent "ought to exist against all or none") (citation omitted).

### D.    The PTAB's Forthcoming Decisions Will Likely Eliminate the Burden of Further Litigation in This Case Altogether

The fourth factor, "whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court" (AIA § 18(b)(1)(D)), favors a

stay because the PTAB will likely cancel all of the asserted claims, thereby eliminating the burden of litigation altogether.  Indeed, the district court, in finding that this factor favored a stay in the Amazon litigation, concluded that a stay pending CBM review offers an "opportunity ... to meaningfully reduce the overall burden" of litigation and "opportunities ... for cost-savings."  A42; A45.

The district court's contrary conclusion as to Apple was based on two key errors:  (1) it focused on resources already expended in the litigation (i.e., sunk costs), as opposed to the reduction in the burden of the remaining litigation; and (2) it focused on *how much* the burden of litigation would be reduced, particularly in comparison to the Google and Amazon cases.  *See* A22; A42.  The proper focus of the inquiry under this factor is whether a stay would reduce the burden of the remaining litigation, not what resources have already been expended.  *See VirtualAgility*, 759 F.3d at 1314 (holding that CBM review "would not just reduce the burden of litigation on the parties and the court—it would entirely eliminate it"); *Versata*, 771 F.3d at 1375 ("The correct test is one that focuses prospectively on the impact of the stay on the litigation, not on the past actions of the parties").  The district court engaged in the proper inquiry when addressing this factor for the Google and Amazon cases, stating that "the parties and the Court *still* have substantial work to do in this case."  A42 (emphasis added).  But in considering

Apple's motion, the district court primarily discussed the resources *previously* expended.

Under the correct inquiry, it is clear that a stay would reduce the burden of further litigation because the PTAB is likely to cancel all of the asserted claims, which would "avoid wasting judicial resources needlessly in resolving the post-trial motions and any resulting appeals." *Ultratec*, 2015 WL 2248437, at *1.

## CONCLUSION

The Court should reverse the district court's order denying Apple's motion for a stay of proceedings pending CBM review and remand with instructions to grant the motion and stay all proceedings pursuant to Section 18(b) of the AIA.[4]

Dated: June 4, 2015

Respectfully submitted.

By: _____/s/ Mark A. Perry_____

---

[4] The district court has scheduled a hearing on the parties' post-trial motions for July 1, 2015, and it is therefore possible that judgment could be entered before this appeal is resolved. Entry of judgment could moot this appeal. To protect the Court's jurisdiction to resolve this statutorily authorized appeal, Apple is simultaneously filing a motion to stay entry of judgment and/or to expedite this appeal. If judgment is nonetheless entered before resolution of this appeal, Apple reserves the right to seek a stay of appellate proceedings to permit the CBM review to proceed to final determination.

James R. Batchelder
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, California  94303-2284
(650) 617-4000

Douglas H. Hallward-Driemeier
ROPES & GRAY LLP
700 12th Street NW Suite 900
Washington, D.C.  20005
(202) 508-4600

Ching-Lee Fukuda
Kevin J. Post
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York  10036-8704
(212) 596-9000

Mark A. Perry
  *Principal Attorney*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
(202) 955-8500
MPerry@gibsondunn.com

Blaine H. Evanson
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California  90071-3197
(213) 229-7000

# ADDENDUM A

Memorandum Opinion and Order Denying Apple's Motion to Stay Litigation Pending Covered Business Method Review, *Smartflash LLC v. Apple Inc.*, Dkt. 558 (E.D. Tex. May 29, 2015)

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| SMARTFLASH LLC, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | **CASE NO. 6:13-cv-447-JRG** |
| | § | |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| APPLE, INC. *et al.*, | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| SMARTFLASH LLC, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | **CASE NO. 6:13-cv-448-JRG-KNM** |
| | § | |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| SAMSUNG ELECTRONICS, INC. *et al.*, | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| SMARTFLASH LLC, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | **CASE NO. 6:14-cv-435-JRG-KNM** |
| | § | |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| GOOGLE, INC. *et al.*, | § | |
| | § | |
| Defendants. | § | |

SMARTFLASH LLC, *et al.*,      §
     §
     Plaintiffs,      §     **CASE NO. 6:14-cv-992-JRG-KNM**
     §
**v.**      §
     §     **JURY TRIAL DEMANDED**
AMAZON.COM, INC. *et al.*,      §
     §
     Defendants.      §

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are (1) the Motion To Stay Litigation Pending Covered Business Method Review filed by Defendant Apple, Inc. (Apple) (Dkt. No. 546 in 6:13-CV-447, hereinafter Apple Motion) and; (2) the Renewed Motion to Stay Litigation Pending Covered Business Method Review filed by HTC America, Inc., HTC Corporation, Samsung Electronics America, Inc., Samsung Electronics Co., Ltd., Samsung Telecommunications America, LLC's (collectively, Samsung)[1] (Dkt. No. 495 in 6:13-CV-448, hereinafter Samsung Motion).

After receiving these motions, the Court ordered briefing in the related Google and Amazon cases on the issue of whether a stay is warranted. Accordingly, also before the Court are (3) Google, Inc.'s (Google) Response to the Court's May 4, 2015 Order (Dkt. No. 164 in 6:14-CV-435) and Google's Motion to Stay Litigation Pending Covered Business Method Review (Dkt. No. 167 in 6:14-CV-435, hereinafter Google Motion); and (4) the Brief In Support of Stay of Litigation Pending Review of the Asserted Patents filed by AMZN Mobile, LLC, Amazon Web Services, Inc., Amazon.Com, Inc., Amazon.com, LLC, Audible, Inc.'s (collectively, Amazon) (Dkt. No. 37 in 6:14-CV-992, hereinafter Amazon Motion).

---

[1] For ease of reference, the Court refers to the various Defendants in the Samsung litigation as "Samsung."

After considering the briefing, and for the reasons discussed below, the Apple Motion and the Samsung Motion are **DENIED**, and the Google Motion is **GRANTED**. Further, the Court **ORDERS** that the Amazon action is **STAYED**.

## BACKGROUND

The first litigation related to all of the above-captioned cases began in this Court approximately two years ago. Since that time, both the parties and the Court have expended significant resources in these highly contentious cases.[2]

### *The Apple and Samsung Litigations*

On May 29, 2013, Smartflash filed separate patent infringement suits against Apple and other defendants (who have since been dismissed) (the -447 case) and Samsung (the -448 case). In both cases, Smartflash asserted the same six patents: U.S. Patent Nos. 7,334,720 ('720 Patent); 8,033,458 ('458 Patent); 8,061,598 ('598 Patent); 8,118,221 ('221 Patent); 8,336,772 ('772 Patent); and 7,942,317 ('317 Patent).

Between March 28 and April 3, 2014 (ten to eleven months after the case was filed), Apple filed twelve separate petitions for covered business method (CBM) review—two for each of the patents-in-suit—on anticipation and obviousness grounds (§ 102 & § 103). On the same day it filed its last petition, Apple filed a motion to stay the -447 proceedings pending completion of the CBM reviews at the Patent Trial and Appeal Board (PTAB). A month and a half later, Samsung filed a motion to stay based on Apple's petitions, requesting a stay the in -448 case if the Court found good cause to stay the -447 case. The Court denied both motions without prejudice on the grounds that the PTAB had not yet instituted any reviews, and as such, the issue was speculative.

---

[2] For ease of reference, a timeline of events is included as Appendix A to this Opinion.

3

In late September 2014 (sixteen months after the case was filed), a few days before the PTAB's six-month deadline for a decision on Apple's twelve § 102 & § 103 CBM review petitions, Samsung filed ten of its own petitions for CBM review. As grounds for its petitions, Samsung asserted anticipation, obviousness, and unpatentable subject matter (generally governed by 35 U.S.C. § 101). Four days later, the PTAB granted Apple's CBM review petitions on several claims across four of the patents but denied review for the majority of challenged claims, including those ultimately asserted against Apple during trial. Apple did not re-file its motion to stay pending CBM review, and the case continued to proceed toward resolution.

In late October 2014 (seventeen months after the case was filed), Apple and Samsung filed motions for summary judgment in this Court, including a motion on § 101 grounds. Beginning on October 30 and continuing until November 25, 2014 (eighteen months after the case was filed), Apple also filed six more petitions for CBM review before the PTAB, raising § 101 grounds. Just over a month later, in December 2014, the Court held a joint hearing on dispositive and *Daubert* motions in the -447 and -448 cases. At that hearing, the Court heard argument on twenty-two motions[3] in addition to arguments that led to additional claim construction briefing. In the following weeks, the Court issued written rulings on all of the disputes raised in the hearing on dispositive and *Daubert* motions and issued a supplemental claim construction order.

The Court held a joint pretrial conference in the -447 and -448 cases on January 6, 2015, where it ruled on motions *in limine*. At this pretrial conference, for the first time, Defendants raised a subject matter jurisdiction defense based on questions of patent ownership. The Court ordered briefing on the question of patent ownership and issued a written ruling. A few days

---

[3] Several of the motions were identical and filed in both cases.

after the -447 and -448 cases were reassigned to the undersigned per General Order,[4] the Court set a date for trial in the -447 case and postponed setting a trial date in the -448 case until after the conclusion of the -447 trial.

In mid-January 2015 (twenty months after the case was filed), Samsung filed an additional CBM review petition challenging the '772 Patent under § 101. Six days later, Magistrate Judge Mitchell issued a Report and Recommendation that recommended denying Apple's and Samsung's motions for summary judgment under § 101. After considering both defendants' objections, the Court issued an Order adopting the Report and Recommendation and denied both defendants' motions for summary judgment under § 101.

In the following weeks, the Court held a second and a third pretrial conference, the parties elected their final claims and prior art references, and the -447 (Apple) case proceeded to trial. On February 24, 2015—after a six-day jury trial—the jury returned a verdict in favor of Smartflash, finding that Apple infringed all of the asserted claims, that Apple willfully infringed the asserted claims, and that all of the asserted claims were valid.

On April 10, 2015, the Court set a post-trial briefing schedule in the -447 case. The Court ordered that the parties file their post-trial motions by May 1, 2015 and their responses by May 26, 2015. These motions and responses are all currently pending before the Court. In addition, the Court set the post-trial motions for a hearing on July 1, 2015. Furthermore, after the conclusion of the -447 (Apple) case, the Court (on March 18, 2015) set August, 3, 2015 as the date for trial in the -448 (Samsung) case.

In late March and early April 2015 (twenty-three months after the case was filed), the PTAB instituted CBM review in seven proceedings filed by Apple and Samsung. These reviews include § 101 grounds on at least one claim of each challenged patent, including five of the six

---

[4] General Order 14-20 issued December 19, 2014, and addressed the assignment of cases in the Eastern District of Texas in light of the confirmation of Judges Amos Mazzant and Robert Schroeder and the upcoming retirement of then Chief Judge Leonard Davis.

originally asserted patents.[5] On May 28, 2015 (twenty-four months after the case was filed), the PTAB instituted review of the challenged claims of the sixth patent—the '772 Patent. Final decisions on the instituted petitions from the PTAB are due within a year of institution. AIA § 18(a)(1); 35 U.S.C. § 326(a)(11).

Apple and Samsung filed the present motions to stay the litigation pending the CBM reviews on April 10, 2015, and April 23, 2015, respectively.

### The Google and Amazon Litigation

In the Samsung litigation, Smartflash asserts that Google Play—installed on accused Samsung products—infringes its patents. Google agreed to defend Samsung in the -448 litigation, and Google and Samsung share common counsel. On May 7, 2014, Smartflash filed a separate lawsuit against Google (-435 case). On December 23, 2014, Smartflash filed a lawsuit against Amazon (-992 case). In both cases, Smartflash asserts the same six patents originally asserted in the Apple and Samsung cases as well as a seventh patent that issued on August 5, 2014—U.S. Patent No. 8,794,516 ('516 Patent). After receiving the motions to stay in the Apple and Samsung actions, the Court ordered briefing on the issue of a stay in the Google and Amazon actions. Two days after the Court ordered this briefing, on May 6, 2015 (a year after the -425 case was filed), Google filed the first of five petitions for CBM review (all based on § 101 grounds). Additionally, the *Markman* hearing in the Google action was originally set for May 14, 2015, but the Court postponed the hearing until June 4, 2015, to consider the briefing on the stay issue.

Finally, from April 30 to May 16, 2015, Apple filed eleven additional petitions for CBM review that all also include § 101 grounds. In all, according to Docket Navigator, Apple, Samsung, and Google have filed a total of forty-eight petitions for CBM review against

---

[5] The '221 Patent, the '720 Patent, the '458 Patent, the '598 Patent, and the '317 Patent.

Smartflash.[6] This number continues to increase, as the latest CBM review filed by Apple occurred on May 16, 2015. According to Smartflash, these CBM review petitions are the most petitions filed against a single entity in the AIA's history.

## APPLICABLE LAW

The Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (September 16, 2011) (AIA) provides in § 18(a)(1) for the creation of "a transitional post-grant review proceeding for review of the validity of covered business method patents." Section 18(d)(1) of the AIA defines the term "covered business method patent" as follows:

> a patent that claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service, except that the term does not include patents for technological inventions.

Section 18(b) codifies the request for a stay for such transactional proceedings of covered business method patents and states:

> (1) IN GENERAL.—If a party seeks a stay of a civil action alleging infringement of a patent under Section 281 of title 35, United States Code, relating to a transitional proceeding for that patent, the court shall decide whether to enter a stay based on—
>
> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
>
> (B) whether discovery is complete and whether a trial date has been set;
>
> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
>
> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.
>
> (2) REVIEW.—A party may take an immediate interlocutory appeal from a district court's decision under paragraph (1). The United States Court of

---

[6] DOCKET NAVIGATOR, https://www.docketnavigator.com/browse/results/3c238ab8-1476-abac-b2ba-be8660ab2141(last visited May 26, 2015) (running search for Document Type: PTAB Petition for Covered Business Method Patent Review; and Party: Smartflash)

Appeals for the Federal Circuit shall review the district court's decision to ensure consistent application of established precedent, and such review may be de novo.

Traditionally, the district court has broad discretion to stay proceedings as an incident to its power to control its own docket. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). The recent decision in *VirtualAgility Inc. v. Salesforce.com, Inc.* is the first appellate decision addressing the proper application of the factors of § 18(b) of the AIA. 759 F.3d 1307 (Fed. Cir. 2014). The Federal Circuit jointly addressed "Factors (A) and (D): Simplification of Issues and Reduced Burden of Litigation." *VirtualAgility*, 759 F.3d at 1310. Under these factors, the court found that, while parties may put forward similar arguments for the simplification-of-issues factor and the burden-of-litigation factor, both "factor[s] are listed separately in the statute [and] [t]hus, even when both factors point in the same direction—in favor of or against the stay—they continue to be separate, individual factors which must be weighed in the stay determination." *Id*. at 1313. It is "improper [for a district court to] review . . . whether the PTAB was correct in its determination that the claims of the . . . patent were more likely than not invalid." *Id*. at 1314. It "weighs heavily in favor of granting the stay" if the PTAB grants CBM review on every claim of the asserted patents. *Id*. The court found that a "simplification argument would be stronger if all of the prior art or relevant invalidity issues were in the CBM review, as this would entirely eliminate the trial court's need to consider validity in the event that some claims survive CBM review." *Id*.

"Under the [AIA's] statutory scheme, district courts have no role in reviewing the PTAB's determinations regarding the patentability of claims that are subject to CBM proceedings." *Id*. at 1313. If the PTAB has issued a determination, a district court's review would be "a challenge to the PTAB's 'more likely than not' determination [that] amounts to an improper collateral attack on the PTAB's decision to institute CBM review." *Id*. "If the district

court were required to 'review' the merits of the PTAB's decision to institute a CBM proceeding as part of its stay determination, it would undermine the purpose of the stay." *Id.*

The Federal Circuit next addressed "Factor (B): Whether Discovery Is Complete and Whether a Trial Date Has Been Set." *Id.* at 1315. It is "not error for the district court to wait until the PTAB ma[kes] its decision to institute CBM review before it rule[s] on the motion." *Id.* "While a motion to stay could be granted even before the PTAB rules on a post-grant review petition, . . . the case for a stay is stronger after post-grant review has been instituted." *Id.* at 1316. "Generally, the time of the [filing of the] motion is the relevant time to measure the stage of litigation" for factor (B). *Id.* at 1317. There is "no error in also taking into account the stage of litigation as of the date that CBM review was granted." *Id.* at 1317 n.6. "Similarly, the district court may consider evidence that develops after the date of the stay motion—for example, the fact that the PTAB granted the CBM petition, any claim amendments proposed or entered in the post-grant proceeding, further evidence of competition, and so on—as it pertains to the other three factors." *Id.*

Finally, the Federal Circuit addressed "Factor (C): Undue Prejudice or Tactical Advantage." *Id.* at 1326. "[C]ompetition between parties can weigh in favor of finding undue prejudice." *Id.* at 1318 (citation omitted). "[W]hether the patentee will be unduly prejudiced by a stay in the district court proceedings during the CBM review, like the irreparable harm-type inquiry, focuses on the patentee's need for an expeditious resolution of its claim." *Id.* "In some circumstances, a defendant's decision to save key pieces of prior art for district court litigation in case its CBM challenge fails would weigh against a stay." *Id.* at 1320. "Even though the "splitting" of prior art is allowed by statute in the sense that litigation estoppel does not attach to art that could have been, but was not, raised in CBM review, such behavior can still give the

movant a clear tactical advantage within the meaning of § 18." *Id.* "Failure to advance irrelevant or redundant prior art would not demonstrate a clear tactical advantage." *Id.* at 1320 n.8.

## ANALYSIS

All four Defendants request a stay in their respective cases. The Court analyzes each case individually under the applicable statutory factors.

### *Apple Litigation (-447 case)*

Apple argues that the first and fourth statutory factors weigh strongly in favor of a stay, and that the second and third factors also favor a stay. Smartflash argues the opposite.

**Factor (A): Whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial**

*The Parties' Positions*

Apple argues that a stay will likely eliminate the issues in this case entirely because the PTAB instituted CBM review on two of the four asserted claims at trial (when the briefing took place) and has now instituted review on the remaining two claims. Apple acknowledges that all the asserted claims are only challenged on § 101 grounds. Further, Apple asserts that the PTAB will likely ultimately find all the asserted claims ineligible because, as of December 31, 2014, the PTAB has invalidated 100% of the claims where it instituted CBM review on § 101 grounds. (*Id.*) Apple also points out that questions arising under § 101 are questions of law. (*Id.*) According to Apple, the cancellation of asserted claims would completely eliminate the need for further proceedings in the case. (*Id.*)

Smartflash counters that a stay cannot streamline a trial that already occurred or simplify an issue no longer in question. (Smartflash -447 Response at 2–3, Dkt. No. 553 in 6:13-CV-447). Smartflash argues that a stay will only allow "two separate tribunals to reach two separate conclusions regarding a single issue of law." (*Id.* at 3). Smartflash asserts that the Court already determined the sole issue on which the PTAB granted CBM review for the asserted claims—

patent subject matter eligibility. (*Id.*) In Smartflash's view, Apple seeks "a back-door interlocutory appeal of the Court's § 101 Order." (*Id.*) Smartflash argues that instead of trying to convince the Court that its § 101 Order meets the requirements of § 1292(b)—allowing the court to certify an order for interlocutory review—it "illogical[ly]" asks the Court to stay the case for a year while the PTAB decision on the same § 101 issue becomes appealable. (*Id.*) Smartflash contends that Apple's attempt to stay post-trial proceedings for the PTAB to address an already-decided legal issue is exactly the type of extraordinary and extremely rare circumstance contemplated by Congress that warrants denying a stay. (*Id.* at 4).

*The Court's Analysis*

As Judge Bryson[7] has noted, "the most important factor bearing on whether to grant a stay" is the prospect that the PTAB proceeding "will result in simplification of the issues before the Court." *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058, 2015 WL 1069111, at *4 (E.D. Tex. Mar. 11, 2015) (Bryson, J.). "[B]oth CBM review and inter partes review, like reexamination, are designed to promote the same policy goals." *Id.* at *5. A primary goal of all of these PTAB proceedings is to give "the expert agency that issued the patents in suit[] an opportunity to determine in the first instance whether the patents are valid in light of the cited prior art and to simplify district court infringement proceedings." *Id.* As Judge Bryson further noted, this process can lead to simplification through a number of different benefits[8]: (1) "All prior art presented to the Court will have been first considered by the PTO, with its particular expertise. (2) Many discovery problems relating to prior art can be alleviated by the PTO

---

[7] Sitting by designation. Given the relatively young history of § 18(b), the Court notes that there are not many appellate decisions on motions to stay pending CBM review.

[8] While Judge Bryson was referring to the benefits of the reexamination process and how they "appl[y] equally to inter partes review," (*id.* at *4), the Court finds these same type of benefits apply equally to covered business method review proceedings as well. In fact, Judge Bryson has already stated as much: "[B]oth CBM review and inter partes review, like reexamination, are designed to promote the same policy goals." *Id.* at *5.

examination. (3) In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed. (4) The outcome of the [PTAB proceeding] may encourage a settlement without the further use of the Court. (5) The record of [the PTAB proceeding] would likely be entered at trial, thereby reducing the complexity and length of the litigation. (6) Issues, defenses, and evidence will be more easily limited in pre-trial conferences . . . . (7) The cost will likely be reduced both for the parties and the Court." *Id.* at *4.

In the present case, none of the policy goals and none of the benefits are furthered by a stay. First, Apple has already challenged the validity of the patents in this Court at the summary judgment stage on almost every potential issue: motions for summary judgment of invalidity under § 101, § 102, and § 103 and two motions for summary judgment of indefiniteness. The Court has already borne the burden of issuing reasoned rulings on the § 101 issues and denied summary judgment motions on § 102 and § 103 grounds. The jury has already passed judgment on § 102 and § 103 grounds as well. From the Court's perspective, there is nothing left to simplify.

Second, only § 101 issues have been raised at the PTAB concerning the claims asserted (and tried) against Apple. This greatly diminishes the role the PTAB will play in determining whether "the patents are valid in light of the cited prior art," as no prior art is needed for the § 101 analysis. It is a pure question of law. Even if trial had not occurred, this fact eliminates the first enumerated benefit that could lead to simplification—that "[a]ll prior art presented to the Court will have been first considered by the PTO, with its particular expertise." *NFC Tech.*, 2015 WL 1069111, at *4.

Third, none of the other benefits leading to simplification will manifest in the present case. For example, "discovery problems relating to prior art" cannot be alleviated as they have already taken place and been dealt with. The "complexity and length of the litigation" will not be

reduced by the record of the PTAB proceeding because the trial has already taken place. "Issues, defenses, and evidence" will not be more easily limited in the pretrial conference; three separate pretrial conferences have already taken place in preparation for the trial which has already occurred. Finally, the cost to the parties and the Court will not be reduced because the overwhelming majority of those costs have already been incurred. As to the other two listed benefits, both are speculative at this stage in the litigation: settlement is speculative given the jury verdict and PTAB cancellation is not guaranteed,[9] despite Apple's belief to the contrary. Accordingly, a stay will neither simplify the issues in question (which have been decided) nor will it streamline a trial that has already taken place.

Fourth, the Court fails to see how staying the case to allow the PTAB to reach a decision on a purely legal matter (§ 101) can simplify any issue either for this Court or the appellate court. The Court reached the § 101 decision in mid-January 2015. The simplest way for the § 101 issue—the sole issue that Apple relies upon for its stay—to reach the appellate court is to let this nearly completed case move forward to appeal.[10] Otherwise, the appellate court will wait a year for the PTAB to actually issue a final decision, and then wait for that decision to be appealed— all the while further expense is incurred. On either path the appellate court will be reviewing the same question of law on the same statutory grounds. Apple has only increased complexity with the PTAB petitions, not reduced it.

This factor weighs against granting a stay.

**(B) Whether discovery is complete and whether a trial date has been set**

*The Parties' Positions*

---

[9] The Court "find[s] it significant that the PTAB granted CBM review on all asserted claims" of the asserted patents. *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1314 (Fed. Cir. 2014). This could result in "the ultimate simplification of issues" if PTAB decides to cancel all the claims. *Id.*

[10] Post-trial briefing is nearly complete. Over 200 pages of post-trial briefing have already been filed, and only replies and sur-replies remain. Furthermore, the final post-trial conference is about a month away.

Apple argues this factor favors a stay because significant post-trial activities remain, such as briefing and oral argument on renewed motions for judgment as a matter of law, motions for a new trial, motions for enhanced damages, and motions for pre- and post-judgment interest. (Apple Motion at 10, Dkt. No. 546 in 6:13-CV-447). Apple contends that the Court still has significant work to do post-trial, and the case is likely to continue on appeal and on remand. (*Id.*) According to Apple, if the PTAB finds all of the asserted claims unpatentable, Smartflash's cause of action is eliminated and the Court must vacate any earlier judgment. (*Id.* (citing *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1347 (Fed. Cir. 2013))).

Smartflash responds that discovery is complete, and the jury rendered a verdict months ago. (Smartflash -447 Response at 6, Dkt. No. 553 in 6:13-CV-447). Smartflash contends that, at this point, seeing the case to its conclusion maximizes judicial economy and party resources because the remaining work to be done is "exceedingly small" compared to the resources already expended. (*Id.* at 6 (quoting *Markets-Alerts Pty, Ltd. v. Bloomberg Fin. LP*, 922 F. Supp. 2d 486, 493 (D. Del. 2013) ("When confronted with a motion to stay in the later stages of a case, the court and the parties have already expended significant resources on the litigation, and the principle of maximizing the use of judicial and litigant resources is best served by seeing the case through to its conclusion")). According to Smartflash, the Court must compare the work left to do with the work that has been done. (*Id.* at 7). Smartflash argues PTAB decisions will unlikely come during post-trial proceedings because decisions on two instituted claims (from the '720 and '221 Patents) are not due until April 2016, (*id.*), and review of two claims (from the '772 Patent) was instituted only a day ago.

*The Court's Analysis*

Apple stretches the bounds of reasonableness by arguing that this factor favors a stay. The plain language of the statute states that "the court shall decide whether to enter a stay based

on . . . whether discovery is complete and whether a trial date has been set." AIA § 18(b). Not only has a trial date been set, the trial is over and a jury rendered a verdict on February 24, 2015. Discovery was complete in September of 2014. Apple's Motion to stay was filed months after the milestones named in the statute were passed. The vast majority of resources and work have already been expended by both the Court and the parties in this litigation.

Another consideration that bears on this factor is whether Apple acted with reasonable diligence in filing its petitions for CBM review and after the petitions were granted, in filing its motions to stay. *NFC Tech*, 2015 WL 1069111, *3. The Court concludes that Apple did not. This case (-447 case) was filed in May of 2013. Nearly a year later, on March 28 and April 3 of 2014, Apple filed twelve CBM petitions which did not even raise § 101 grounds. In fact, Apple did not file any petitions for CBM review on § 101 grounds until seventeen months after Smartflash filed suit, just two months before pretrial, and approximately three months before trial commenced.[11] This delay is especially unreasonable given Apple's own statement that "[a]fter Apple became aware of the patents on May 29, 2013, when this case was filed, Apple has had good-faith belief in its strong invalidity and non-infringement defenses [including § 101], as expressed in its discovery responses, contentions, and expert reports." (Apple's Motion for Summary Judgment of No Willful Infringement and No Indirect Infringement at 5, Dkt. No. 267 in 6:13-CV-447). Apple even raised the § 101 defense in its answer filed on July 24, 2013, which is fifteen months before Samsung filed its first CBM petitions on § 101 grounds, sixteen months before Apple filed its first CBM petition on § 101 grounds, and eighteen months before Samsung filed its last petition on § 101 grounds, finally encompassing all the asserted claims in the Apple case. (Apple's Answer, Dkt. No. 29 in 6:13-cv-447). Even though Apple's Motion is based on institution decisions on Samsung's petitions, the timing of all parties petitions effectively

---

[11] After a petition for CBM review is filed, the patent owner has three months to file a preliminary response, and the PTAB will determine whether to institute review within three months of the response. 77 Fed. Reg. 48680, 48692 (Aug. 14, 2012).

guaranteed no institution decision would be issued before the completion of trial. This Court is hard-pressed to find that Apple acted with reasonable diligence in filing petitions raising its § 101 invalidity defense—the only ground that the PTAB instituted review on for the asserted claims in the Apple case. As a result of such conduct, the Court is faced with Apple's motion to stay at the latest conceivable stage of district court litigation.

The Court is left to conclude that this obvious delay negates the intent of the CBM review process. CBM review was described as "offer[ing] a relatively cheap *alternative* to civil litigation for challenging [] patents, and [] reduce the burden on the courts." 157 Cong. Rec. S1367 (Mar. 8, 2011) (statement of Sen. Kyl) (emphasis added). In fact, the apparent, fundamental purpose of the CBM process (introduced by the Schumer-Kyl amendment) is to provide a "cost-efficient *alternative* to litigation." 157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer) (emphasis added). The policy considerations behind CBM review and inter partes review are similar. *NFC Tech.*, 2015 WL 1069111 at *5 (citing H. Rep. No. 112–98, Part I, at 48 (2011) (statutory post-grant review procedures were designed to be "quick and cost effective alternatives to litigation") (Bryson, J.); 157 Cong. Rec. S952 (daily ed. Feb. 28, 2011) (inter partes review was intended to provide a "faster, less costly alternative[] to civil litigation to challenge patents) (statement of Sen. Grassley); *id.* at S5319 (daily ed. Sept. 6, 2011) (post-grant review of patents, including inter partes review, was meant to be "an inexpensive substitute for district court litigation" that "allows key issues to be addressed by experts in the field") (statement of Sen. Kyl)).

At this late litigation stage, if the Court were to give credence to Apple's arguments, this would serve to encourage parties to misuse CBM review in a manner completely opposite of what Congress intended, by making it into a cost-increasing, post-trial second chance at additional litigation, rather than a cost-effective *alternative* to litigation. Senator Kyl's concern

that "district courts have been content to allow litigation to grind on while a reexamination is being conducted, forcing the parties to fight in two fora at the same time" has no application here. *Id.* In fact, the present situation appears to be the precise inverse of this concern. It is Apple that is attempting to force completed litigation to grind on. With appeals certain to follow post-trial proceedings regardless of the outcome, staying the case now would delay the ultimate resolution of both the § 101 issues and the entire case.

This factor weighs heavily against granting a stay.

### (C) Whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party

*The Parties' Positions*

Apple argues that it is unfair and prejudicial to force Apple "to continue to litigate just because it happened to be the first defendant scheduled for trial." (Apple's Motion at 11, Dkt. No. 546 in 6:13-CV-447). Further, Apple argues it would be unjust to make Apple pay damages on ineligible claims merely because it was selected for trial first. (*Id.*) Apple contends that Smartflash would not unduly suffer prejudice because it does not compete with Apple and faces no risk of losses that cannot be made up by damages. (*Id.* at 12). Apple asserts that Smartflash's claims of prejudice are undermined by its choice to wait over five years after '720 Patent issued to file suit. (*Id.* at 12–13 (citing *VirtualAgility*, 759 F.3d at 1319–20)). In Apple's view, the Federal Circuit will eventually have to decide the patent eligibility issue, so "it makes sense to stay this broader-scoped proceeding" to allow the PTAB to make its determination first. *Id.*

Smartflash responds that the Court has already found that Apple's splitting of its invalidity defenses cuts against issue simplification and provides a tactical advantage to Apple. (Smartflash -447 Response at 7, Dkt. No. 553 in 6:13-CV-447 (citing Memorandum Opinion and Order Denying Stay at 8–9, Dkt. No. 175 in 6:13-CV-447)). According to Smartflash, the Federal Circuit confirmed this approach in *VirtualAgility*. (*Id.* (citing *VirtualAgility*, 759 F.3d at

17

1315)). Smartflash contends the present scenario weighs against a stay even more where "staying a case only to grant the opportunity to re-litigate an identical issue before a different tribunal is a quintessential tactical advantage." (*Id.*) Smartflash argues that a delay is inherently prejudicial and hinders Smartflash's licensing efforts for the patents-in-suit, which expire in 2020. (*Id.* at 8). Smartflash urges that its alleged delay in filing suit does not minimize prejudice to it because only one of the tried patents issued before 2012, half of the tried claims issued only a few months before it filed suit, and that it was excusable for it to develop a complete patent portfolio before asserting its rights. (*Id.*) Smartflash argues that Apple conversely had no justification for not asserting § 101 in its April 2014 petitions and waiting to assert its § 101 arguments until November 2014. (*Id.*) Smartflash argues that Apple's Motion is based on Samsung's § 101 petitions[12] (filed September 16, 2014—sixteen months after the complaint), and that Apple failed to petition on that ground until a month before the initial pretrial conference, November 30, 2014.

Moreover, Smartflash argues that the decisions from either forum will be appealed, and on the current schedule, the Court's decisions will be on appeal before the PTAB issues any final decision. (*Id.* at 9). Smartflash contends that an appeal that can resolve the "entire dispute at once is a far better use of judicial and party resources." (*Id.* (citing *U.S. v. Nixon*, 418 U.S. 683, 691 (1974) ("The finality requirement . . . embodies a strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals. This requirement ordinarily promotes judicial efficiency and hastens the ultimate termination of litigation.") (internal citations omitted))). Additionally, Smartflash asserts that Apple will pay on the judgment only if the Federal Circuit affirms the Court's legal

---

[12] Since the time it filed its Motion to Stay, Apple filed additional CBM petitions

determination of subject matter eligibility, and therefore, Apple does not face a competitive disadvantage. (*Id.* at 10).

*The Court's Analysis*

As the Court has previously noted, Smartflash has a recognized interest in timely enforcement of its patent rights, and "that interest is entitled to weight." *NFC Tech.*, 2015 WL 1069111, at *2 (Bryson, J.) (collecting cases); *see also Ambato Media, LLC v. Clarion Co. Ltd.*, 2:09-CV-242, 2012 WL 194172 at *1 (E.D. Tex. Jan. 23, 2012). Further, the Court has an obligation "to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. However, the potential for delay alone does not establish undue prejudice. *NFC Tech.*, 2015 WL 1069111, at *2 (Bryson, J.). Instead, courts typically look to other factors like the timing of the stay request, the timing of the administrative review request, the status of the review proceedings, and the relationship between the parties. *See Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P.*, 922 F. Supp. 2d 486, 494 (D. Del. 2013).

i.      Undue Prejudice to Smartflash

Smartflash does not compete with Apple and does not risk loss of market share. Smartflash's licensing efforts may be disrupted by a stay or by the inherent uncertainty about the value of the patents resulting from the PTAB's decision to institute CBM review. Further, Smartflash can be compensated for lost licensing opportunities through monetary damages. Moreover, Smartflash could have sued Apple as early as 2008 when the '720 Patent issued and it knew of Apple's alleged infringement.

ii.      Tactical Advantage to Apple

In this situation, a stay would give Apple a clear tactical advantage. By delaying its petitions for seventeen months, Apple has multiple opportunities to challenge the § 101 validity of Smartflash's patents in two separate forums. *VirtualAgility, Inc.*, 759 F.3d at 1319–20 (noting

that a delay in filing the CBM petitions is relevant to whether defendants sought to gain a tactical advantage or had a "dilatory motive"); *Segin Sys, Inc. v. Stewart Title Guar. Co.*, 30 F. Supp. 3d 476, 484 (E.D. Va. 2014) ("[T]wo separate opportunities in two separate forums to challenge the validity of Plaintiffs' patent does raise a concern of an unfair tactical advantage, giving them two bites of the apple as to a central defense."). Failing to point out this clear tactical advantage would encourage parties to engage in gamesmanship with the PTAB and the courts, which runs counter to the policies underlying Congress's decision to open the avenue of CBM review.

As for undue prejudice, there is little evidence that Smartflash would suffer undue prejudice from a stay. However, a stay would present Apple with a clear tactical advantage and encourage gamesmanship through splitting invalidity defenses and delaying filing of CBM petitions. Such practices undermine the fundamental policies of CBM review.

On balance, this factor also weighs against a stay.

### (D) Whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court

*The Parties' Positions*

Apple contends that a stay would conserve resources because the PTAB will more likely than not cancel the asserted claims and eliminate the need for further proceedings in the case. (Apple Motion at 13–14, Dkt. No. 546 in 6:13-CV-447). According to Apple, no extraordinary and extremely rare circumstances exist here to justify denying a stay. (*Id.*) Apple argues that, without a stay, the Court will have to decide issues regarding claims that will likely be cancelled through CBM review. (*Id.* at 14). Moreover, Apple asserts that even cancellation of just two of the asserted claims would require a new damages trial. (*Id.*)

Smartflash responds that the Court has already expended substantial resources resolving the only relevant issue in the instituted CBM reviews. (Smartflash -447 Response at 10, Dkt. No. 553 in 6:13-CV-447). Smartflash accuses Apple and Samsung of intentionally driving litigation

costs up by re-litigating issues in a different forum. (*Id.*) Smartflash contends that the remaining burden on the parties is minimal because post-trial briefs have already been filed and many issues overlap with summary judgment motions, which the Court has already addressed. (*Id.*) Smartflash argues that the congressional and judicial policies behind the finality-of-judgments rule counsel against Apple's argument that this broader-scoped proceeding should be stayed pending resolution of a single issue. (*Id.* at 11 (citing *U.S. v. Nixon*, 418 U.S. 683, 691 (1974))). According to Smartflash, "a swift Federal Circuit appeal could deal with most of these petitions via one consolidated appeal from this case, [but] a post-trial stay will only promote the iterative PTO gamesmanship in which the Defendants are currently engaged." (*Id.* at 13).

*The Court's Analysis*

"Congress's addition of a fourth factor requiring an inquiry into whether a stay will reduce the burden of litigation on the parties and on the court indicates that special attention should be given to minimizing the burdens of litigation." *NFC Tech.*, 2015 WL 1069111 at *2 (Bryson, J.). The analysis of this factor overlaps with the analysis for the first factor because simplifying the issues will usually reduce the burden of litigation on the parties and the Court. *Id.* Nevertheless, Congress expressly included this fourth factor in the statute and it is therefore separately "weighed in the stay determination." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1313 (Fed. Cir. 2014).

As noted above, the legislative history of AIA § 18 makes it clear that the intended purpose of CBM review is to provide a cost-saving alternative forum where the parties can take advantage of the PTO's subject matter expertise in lieu of costly litigation in the district courts. *See* 157 Cong. Rec. H4429 (daily ed. June 22, 2011) ("Section 18 . . . will save 90 percent of the costs incurred in civil litigation.") (statement of Rep. Quayle). Congress apparently hoped the

process would be used to simplify and decrease the burden of litigation on parties and courts in response to abusive litigation tactics.

However, the benefits of having an available cost-saving alternative forum are greatly diminished (if not inverted) here. Apple's delay in filing CBM petitions under § 101 created the situation now confronting the Court: the vast majority of civil ligation costs have already been spent and the heavy burden of litigation has already fallen upon the Court. In the Apple case to date, the Court has issued over 400 pages of orders and opinions. The Court has pored through 971 pages of briefing and reviewed 10,622 pages of associated exhibits on significant disputes, including motions to sever, motions to transfer, motions to strike and exclude, motions for summary judgment, *Daubert* motions, and claim construction briefings. In addition, the Court has held a six-day jury trial, which required the citizens of this district to be involved in jury service. In this effort, the parties and Court have nearly carried the burden of litigation to final judgment; 200 pages of post-trial motions and responses have been submitted, and the final hearing on those motions is about a month away. Meanwhile, in response to Apple's eleventh-hour petitions, the PTAB has just begun its entirely separate effort to duplicate the Court's existing determination of a pure question of law. This situation does not reduce the litigation, it has increased the litigation.

The current post-trial litigation schedule will allow the parties to appeal decisions of the entire litigation several months before the PTAB is likely to issue its final decisions on the same § 101 issues already litigated in this Court. An appeal of the entire litigation would avoid the costly and burdensome prospect of piecemeal appeals that would presumably occur if the PTAB and the Federal Circuit do not invalidate every asserted claim.[13] In essence, a stay would

---

[13] The Federal Circuit has yet to decide an appeal from a final PTAB decision in a CBM review. Of the thirteen appeals from IPR proceedings, it has affirmed all of them, eleven of them by Fed. Cir. R. 36 Summary Affirmance.

"[p]ermit piecemeal, prejudgment appeals," which the United States Supreme Court "ha[s] recognized, undermines efficient judicial administration and encroaches upon the prerogatives of district court judges, who play a special role in managing ongoing litigation." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (internal quotations omitted). If a piecemeal appeal concerning the § 101 issue takes place, and this Court is left with the burden of a new trial but with none of the benefits of appellate rulings on the overwhelming majority of the other issues dealt with at trial (such as Smartflash's damages model), justice and judicial economy will be disserved.[14] Since the goal is to reduce the burden of future litigation, it would make much more sense to send this Court's final decision on § 101, final decision on damages, jury decision on § 102, and jury decision on § 103 for the Federal Circuit to resolve in its entirety.

As other courts have observed, when the case reaches post-trial motions, it is most efficient for the Court to move forward with all post-trial motions so that the Federal Circuit may review the *entire* case on appeal, including the validity of all of the plaintiff's patents, as soon as possible. *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846, 2013 WL 6225202, at *4 (N.D. Cal. Nov. 25, 2013). In the interests of reaching a full and final resolution to the case as quickly as possible, this case presents a set of circumstances which counsel against granting a stay under the fourth factor.

In sum, the first, third, and fourth factors weigh against granting a stay, and the second factor weighs heavily against granting a stay. In this situation, "seeing the case to its conclusion maximizes judicial and party resources," and discourages gamesmanship in filing CBM petitions. Accordingly, a stay of the Apple litigation is unwarranted.

---

[14] Presumably, if the Court held "a new damages trial," as Apple proposes might happen, using an incorrect damages model (as Apple alleges), then that damages model in the second trial could be overturned and remanded for a *third* trial using what the Federal Circuit deems is the correct damages model. It makes more sense for all issues to be appealed at once, as the contrary situation does not "reduce the burden of litigation on the parties and on the Court."

*Samsung Litigation (-448 case)*

Samsung argues that all four factors weigh heavily in favor of staying this action for the duration of the CBM proceedings. Smartflash disagrees.

### (A) Whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial

*The Parties' Positions*

According to Samsung, this is the most important factor. (Samsung Motion at 6, Dkt. No. 495 in 6:13-CV-448 (citing *NFC Tech*, 2015 WL 1069111 at *6)). Samsung argues that the PTAB determined that four of the five patents-in-suit are more likely than not invalid under § 101, and that the likely cancellation of the patents would dispose of the entire litigation. (*Id.*) Samsung claims that the PTAB's institution of petitions under § 101 encompass all asserted claims from the '720 Patent (claim 14), the '458 Patent (claim 11) the '598 Patent (claim 7) and the '221 Patent (claims 2 & 11). (*Id.* at 1–2 n.3). Claims 2 and 11 from the '221 Patent are also being reviewed by the PTAB under § 102 grounds in light of a single piece of prior art. (*Id.* at 2 n.3). Samsung—like Apple—also noted that review had not been instituted for the asserted claims in the '772 patent, (*id.* at 2 n.5), but the Court observes that CBM review of the '772 Patent was instituted on May 28, 2015. Additionally, Samsung asserts that cases involving the asserted patents have been multiplying and notes that Smartflash also filed cases against Google, Amazon, and a second case against Apple. (*Id.* at 7). Samsung indicates that Apple will likely appeal claim construction and § 101 findings that will apply across all cases. (*Id.*)

As with Apple, Smartflash responds that the Court has already ruled on the only issue on which the PTAB instituted review for the majority of relevant proceedings—§ 101. (Smartflash -448 Response at 3, Dkt. No. 498 in 6:13-CV-448). Smartflash contends that both the parties and the Court expended substantial efforts on the issue, which included supplemental filings to address new authority. (*Id.* (citing Dkt. Nos. 367, 403 & 421 in 6:13-CV-448)).

According to Smartflash, the only remaining issue in question that the PTAB could determine relates to anticipation from one piece of prior art of just two claims of one of the asserted patents (Claims 2 and 11 of the '221 Patent). (*Id.*) Smartflash argues that a stay would decide nothing with regard to the five other prior art references asserted against the '221 Patent or other claims of the other patents-in-suit. (*Id.*) Smartflash further asserts the same "back-door interlocutory appeal" argument as in the Apple case. (*Id.* at 4–5). According to Smartflash, where a party seeks to stay a case ready for trial while the PTAB decides a previously determined issue of law is precisely the "extraordinary and extremely rare" circumstances envisioned by Senator Schumer. (*Id.* at 5).

Moreover, Smartflash argues that the Court's eventual final judgment would "terminate most of the PTAB proceedings" by collateral estoppel. (*Id.* at 5 (citing *B&B Hardware v. Hargis Indus, Inc.*, 135 S.Ct. 1293, 1305 (2015))). Smartflash contends that attempts to re-litigate the § 101 issue at the PTAB would impermissibly and collaterally attack the Court's § 101 decision. (*Id.* (citing *Heck v. Humphrey*, 512 U.S. 477, 493 n.10 (1994) (Souter, J., concurring) ("[T]he principle barring collateral attacks [is] a longstanding and deeply rooted feature of both the common law and our own jurisprudence . . . ."); *VirtualAgility, Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1313 (Fed. Cir. 2014) (reasoning that collateral attacks on the PTAB's institution decisions are inappropriate))). Smartflash further asserts that the PTAB did not consider the Federal Circuit's *DDR Holdings* opinion or the Court's § 101 Order in the institution decisions. (Smartflash -448 Response at 6).

*The Court's Analysis*

As an initial matter, the Court notes that the -447 case was originally scheduled for trial at the same time as the Apple case. The Samsung trail was reset for August 2015 to allow the parties to take advantage of the Court's decisions in the Apple trial.

As a result, the Court's reasoning and analysis for this factor in the Apple litigation is largely applicable here. As in the Apple case, Samsung challenged the patents on almost every potential issue at the summary judgment stage before this Court. Samsung's Motion is primarily based on the PTAB's institution of CBM review under § 101 for the asserted patents.[15] As with the Apple litigation, the Court already decided the § 101 issue, and it is no longer a question before the Court. In other words, it will not be an issue at trial. Besides the § 101 issue, there is only one issue that the PTAB could decide and potentially simplify for the Court—anticipation (§ 102) of claims 2 and 11 of the '221 Patent. This one issue is quite narrow and would do little to streamline the trial overall.

In other words, an analysis of the benefits that support simplification lead the Court to the same conclusion that was reached in the Apple case.[16] For example, all the prior art that will be asserted at trial is not before the PTAB. Therefore the PTAB's "particular expertise" will not be utilized. The discovery problems that could be prevented by a PTAB proceeding have already taken place, as the Court has already dealt with multiple motions to compel, including one emergency motion to compel, held two hearings on these motions, and dealt with discovery and evidence issues at the first pretrial conference. (Smartflash's Motion to Compel, Dkt. No. 113 in 6:13-CV-448); (Smartflash's Emergency Motion to Compel, Dkt. No. 197). The Court has no specific evidence before it to conclude that PTAB proceedings would further settlement discussions, and the "more likely than not" standard does not equate to a "guarantee" that the claims will be held invalid.[17] Further, the record of PTAB proceedings would not reduce the

---

[15] The Court acknowledges that the '221 Patent claims are also being challenged on § 102 grounds.

[16] These benefits are listed above as well as in Judge Bryson's opinion in *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058, 2015 WL 1069111, at *4 (E.D. Tex. Mar. 11, 2015) (Bryson, J.).

[17] The Court, however, does note that these two potential benefits favor Samsung's position more than Apple's position given that a jury trial has not yet occurred in the Samsung case.

complexity and length of the litigation, as this case is already complex, has been proceeding for over two years, and is on the eve of trial. Issues, defenses, and evidence have already substantially been dealt with in pretrial conferences, and both the parties and the Court have already incurred substantial cost that is not likely to be reduced (unless all asserted claims are cancelled in the PTAB's determination and such a determination is entirely affirmed).

As with the Apple case, the quickest and most efficient final resolution of the § 101 issue in the litigation would occur through appeal to the Federal Circuit. On either path the appellate court will be reviewing the same question of law on the same statutory grounds. On the current schedule, this case will likely be on appeal before the PTAB issues final decisions on just the § 101 validity of the asserted patents. Accordingly, this factor weighs against a stay.[18]

**(B) Whether discovery is complete and whether a trial date has been set**

*The Parties' Positions*

According to Samsung the appropriate time to measure the stage of litigation for the purposes of this "renewed" motion is May 2014 when Samsung filed the first motion to stay. (Samsung Motion at 8, Dkt. No. 495 in 6:13-CV-448 (citing *VirtualAgility*, 759 F.3d at 1317)). Samsung notes that at that time (over a year ago), the Court found the case was at an "intermediate stage," which weighed in favor of granting a stay. (*Id.* (citing Memorandum Opinion and Order Denying Stay at 8, Dkt. No. 175 in 6:13-CV-447)).

Samsung further contends that even considering the present stage of litigation, much work remains before the case is ready for trial, such as additional depositions, a possible

---

[18] Though not specifically before the Court, Smartflash's collateral estoppel arguments are noteworthy. Just as the Court is precluded from an impermissible collateral attack on the PTAB's institution decisions, the PTAB may have to give preclusive effect to the Court's judgment. In *B&B Hardware*, the Supreme Court recently noted that "[n]either is issue preclusion a one-way street" between district courts and administrative agencies. 135 S.Ct. at 1305–06 ("When a district court, as part of its judgment, decides an issue that overlaps with part of the TTAB's analysis, the TTAB gives preclusive effect to the court's judgment.").

response to an expert report, two pretrial conferences, and likely further motion practice on evidentiary issues. (Samsung Motion at 8–9). Additionally, Samsung asserts that the trial itself "will be a substantial endeavor," requiring testimony regarding three sets of technology from Samsung, HTC, and Google, overseas and out-of-state witnesses, and interpreters. (*Id.* at 9).

Smartflash responds that Samsung, in arguing that its case should be tried before the Apple case, already told the Court that the case was ready for trial months ago. (Smartflash -448 Response at 7, Dkt. No. 498 in 6:13-CV-448 (citing Jan. 6, 2015 Pretrial Hearing Tr. 8:19–20 ("[W]e feel that we're ready to go and we would like to be the first to defend ourselves."))). Further, Smartflash argues that the parties and the Court have already expended "vast resources" to get to this stage of litigation, and that the only remaining issues are evidentiary rulings, a deposition related to Samsung's own January 2015 damages rebuttal, and trial. (*Id.*) Smartflash contends that the remaining steps are relatively small compared to the work done on the case up to this point—"over [fifty] depositions, terabytes of source code production, millions of pages of documents, Orders on discovery disputes, claim construction, and summary judgment rulings on 'almost every potential trial issue.'" (*Id.* (citing Order Regarding Letter Briefs, Dkt. No. 312 in 6:13-CV-448)). Additionally, Smartflash argues that the Court can efficiently resolve the remaining issues in the case because of its familiarity with overlapping issues from the Apple litigation. (*Id.*)

Additionally, Smartflash urges the Court to reject Samsung's argument that it should consider May 2014 as the relevant stage of litigation. (*Id.* at 8). Smartflash points out that Samsung's first motion to stay relied on Apple's CBM petitions and corresponding motion to stay, which the Court denied in July 2014. (*Id.*) According to Smartflash, the correct date for the Court to consider in the stay analysis is when Samsung filed its present motion to stay on April 10, 2015. (*Id.*)

28

*The Court's Analysis*

As a preliminary matter, Samsung's present Motion to Stay is not a renewed motion. Samsung's May 2014 Motion was based Apple's Motion to Stay the -447 case and on Apple's March and April 2014 CBM petitions, none of which raised § 101 grounds. When the PTAB granted a few of those petitions in September, Samsung could have renewed its motion or filed another motion to stay at that time.[19] The September 2014 CBM petitions on which the present Motion is based have nothing to do with Apple's March and April 2014 CBM petitions. Thus, the present Motion to stay is unrelated to Samsung's May 2014 Motion because it is based on entirely different CBM proceedings. Accordingly, the Court does not consider it a renewed motion and does not consider that May 2014 is the appropriate time to measure the stage of litigation. Instead, the Court considers Samsung's motion on May 28, 2015—the time "the PTAB made its decision to institute CBM review" on the all the patents. *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1315 (Fed. Cir. 2014).

This case has been pending for two years. Discovery is complete, an initial pretrial conference has occurred, and trial is set for August 3, 2015. Despite the August trial date, this case is procedurally on the eve of trial. Samsung admitted as much when it asked the Court to proceed to trial before Apple, saying "we feel that we're ready to go and we would like to be the first to defend ourselves." (Jan. 6, 2015 Pretrial Hearing Tr. 8:19–20). All that remains before trial is a follow-on pretrial conference (taking into account the rulings from the Apple trial) and, apparently, depositions associated with an amended expert report. These small endeavors do not outweigh the fact that, to date, this case has required a similar amount of the Court's resources as

---

[19] That the Court did not formally deny Samsung's motion until December 2014 does not undermine this statement. By the express language of the Motion, Samsung only requested a stay if the Court decided to stay the -447 case: "[S]hould the Court determine that there is good cause to stay the -447 case pending resolution of that CBM review, Defendants respectfully request that the Court stay this action as well." (Samsung's First Motion to Stay at 1, Dkt. No. 149 in 6:14-CV-448). The Court denied the Motion to Stay in Apple litigation without prejudice on July 8, 2014.

the Apple litigation. Until the second pretrial conference in the Apple case when the Court split the two cases for independent trials, Apple and Samsung participated together in every major stage of the cases. Further, Samsung even sought to participate in the second pretrial conference in the -447 action. (Samsung's Emergency Motion for Leave to Participate, Dkt. No. 455 in 6:13-CV-448).

Considering whether Samsung acted with reasonable diligence in filing its CBM petitions, Samsung's sixteen-month delay in filing any CBM petitions was not justified. Just like Apple's, Samsung's summary judgment briefing on willfulness argued that its invalidity defenses were objectively reasonable and "available at the time of first alleged infringement" including "invalidity based on 35 U.S.C. § 101 (controlling law at the time)."[20] (Samsung's Reply in Support of their Motion for Summary Judgment at 1–2, Dkt. No. 357 in 6:13-CV-448). It is disingenuous for Samsung to tell this Court that it has had a good faith belief in its § 101 defense from the start of the case when discussing the topic of willfulness, then turn around and maintain that it needed more time to be sure about its § 101 defense when discussing filing for review at the PTAB. As with Apple, the Court is hard-pressed to find that Samsung acted (in filing petitions sixteen months after the case was filed) with reasonable diligence in filing CBM petitions raising a § 101 defense. Further, the same policy concerns that the Court discussed under the second factor in the Apple case apply with equal force here. If CBM review is intended to be a cost effective alternative to litigation, gamesmanship that turns it into a cost-increasing second chance at litigation must be discouraged. This factor weighs against a stay.

**(C) Whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party**

*The Parties' Positions*

---

[20] This summary judgment argument undercuts Samsung justification for their delay in filing PTAB petitions under § 101 grounds due to any uncertainty related to the *Alice* decision in the months prior to when Supreme Court issued it on June 19, 2014.

Samsung makes the same arguments as Apple regarding the reasons that Smartflash will not suffer undue prejudice from a stay. (Samsung Motion at 9–10, Dkt. No. 495 in 6:13-CV-448). According to Samsung, it chose not to file its own CBM petitions in March and April 2014 after reviewing Apple's petitions in an attempt to avoid duplicative proceedings. (*Id.* at 11). Samsung asserts that when it filed its own CBM petitions on September 26, 2014, it "decided not to burden the Court with a renewed motion to stay" while uncertainty remained over its petitions. (*Id.*) Now, with reviews granted on its CBM petitions, Samsung asserts that it seeks "only a short stay" until the final PTAB decisions and that Samsung will suffer great prejudice if forced to litigate issues related to patent claims more likely than not invalid. (*Id.* at 11–12).

Smartflash counters that, as with Apple, splitting invalidity defenses provides a quintessential tactical advantage. (Smartflash -448 Response at 8, Dkt. No. 498 in 6:13-CV-448). Smartflash further argues that Samsung "has already obtained numerous risk-free bites at the invalidity issue at the PTAB" because it could wait on the results of the PTAB's decisions on Apple's invalidity theories first and may not risk estoppel for invalidity defenses in CBM petitions that the PTAB denied.[21] (*Id.* at 9–10).

Smartflash argues that it will suffer undue prejudice for the same reasons as with Apple. (*Id.* at 10). Smartflash adds that the timing of the request for administrative review and its status may indicate that a delay is unduly prejudicial. (*Id.* (citing Memorandum Opinion and Order Denying Stay at 8, Dkt. No. 175 in 6:13-CV-447)). Smartflash points out that Samsung's first ten CBM petitions were not filed until sixteen months after Smartflash's complaint, six months after Apple's first twelve petitions were filed, four months before the scheduled trial date at the time, and a few days before the PTAB's deadline on Apple's first twelve petitions. (*Id.* at 11). Smartflash asserts that the instituted PTAB proceedings will not conclude until six months after

---

[21] Smartflash notes that "[t]he effect of a non-institution decision on post-grant review estoppel will likely be determined by the Federal Circuit in *Synopsis, Inc. v. Mentor Graphics*, No. 14-1516."

the August trial date and that the proceedings for the '772 Patent lag behind by four additional months. (*Id.*)

Moreover, Smartflash again argues that decisions from either forum will be appealed, and that proceeding with the case and appealing the entire litigation is a better use of resources. (*Id.* at 11–12 (citing *Nixon*, 418 U.S. at 691 (1974))).

*The Court's Analysis*

The relationship and undue prejudice considerations between Smartflash and Samsung are almost identical as that of Smartflash and Apple. Smartflash does not compete with Samsung, does not risk loss of market share, can be compensated through monetary damages, and waited to file suit when it first knew of the alleged infringement.

With regard to considerations of tactical advantage to Samsung, as noted above, Samsung waited sixteen months after Smartflash filed its complaint before filing any petitions for CBM review. At the time, trial was scheduled to be held in just four months. By not filing CBM petitions of their own when Apple filed its March and April 2014 petitions, Samsung elected to wait such that it could choose different invalidity defenses without any risk of estoppel. By waiting to seek a stay until the eve of the PTAB's likely decisions on Apple's petitions, Samsung could maximize its advantage. Splitting invalidity defenses provides a tactical advantage. Similarly, Samsung's delay in filing CBM petitions raising its § 101 invalidity defenses all but ensured that the issue would be fully litigated in the Court before the PTAB made any institution decision, providing Samsung another opportunity to litigate the issue if the PTAB granted the petitions. Moreover, for no apparent reason, Samsung waited an additional four months to file similar petitions for a similar patent. Samsung finally challenged the '772 Patent on § 101 grounds in January 2015, just days before the Magistrate Judge issued her Report and Recommendation on the § 101 Motions for Summary Judgment.

Samsung lacks justification for waiting to file any CBM petitions until sixteen months into this litigation. A stay would present Samsung with a clear tactical advantage and encourage gamesmanship through the splitting of invalidity defenses and via the delayed filing of CBM petitions. Such practices run directly counter to the announced public policies underpinning CBM review. As with the Apple case, however, there is little evidence that Smartflash would suffer undue prejudice or irreparable harm from a stay. On balance, this factor also weighs against a stay

**(D) Whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court**

*The Parties' Positions*

Samsung makes essentially the same arguments as Apple for this factor: the PTAB is likely to eliminate the need for further litigation and no extraordinary circumstances exist here. (Samsung Motion at 12–13, Dkt. No. 495 in 6:13-CV-448).

Smartflash responds that unless the PTAB cancels every asserted claim, a stay will increase the burden on the parties and the Court. (Smartflash -448 Response at 12, Dkt. No. 498 in 6:13-CV-448). According to Smartflash, the Court's prior experience with the patents from the Apple litigation weighs against a stay under this factor. (*Id.* (citing *VirtualAgility*, 759 F.3d at 1315 n.4)). Smartflash contends that the PTAB proceedings will only address one disputed issue, while delaying the case until ultimate resolution from the Federal Circuit will reduce efficiencies created by the Court's experience with related litigation. (*Id.* at 12–13).

*The Court's Analysis*

Samsung's delay in filing CBM petitions leaves the Court and the parties to face a very similar situation as in the Apple litigation: the majority of civil ligation costs have already been spent; the parties and Court have carried the burden of litigation to just shy of trial; and in

response to Samsung's eleventh-hour petitions, the PTAB has just begun its entirely separate effort to duplicate the Court's existing determination of a pure question of law.

With respect to the burden, a substantial amount of resources have already been spent in this case and the additional litigation will not outweigh the efforts expended thus far. To date in the Samsung case, the Court has entertained four emergency motions, issued nearly 400 pages of opinions and orders and recorded 508 docket entries. The parties have filed, and the Court has read, 1,251 pages of briefing and 16,015 pages of associated attachments on significant disputes, including motions to dismiss, motions to compel, motions to strike and exclude, motions for summary judgment on numerous issues, protective orders, *Daubert* motions, and claim construction. In other words, Samsung—like Apple—does not appear to have used the PTAB proceedings as an alternative to district court litigation. Instead, Samsung also appears to have used the PTAB proceedings as a way to increase the costs of an already burdensome litigation while also positioning itself for a second shot at the invalidity target. Relative to the amount of resources already expended and the late stage of this litigation at the eve trial, the Court finds that that the PTAB's determination of the § 101 issue and § 102 issue for 2 claims will not substantially reduce the further burden of litigation to a significant degree.

Finally, as with the Apple case, the "more likely than not" standard is not a "guarantee" that all asserted claims will be cancelled. Similarly, this case's current schedule will allow for appeals to reach to the Federal Circuit prior to appeals from final PTAB decisions. An appeal from the Court will allow the Federal Circuit to decide more than just the two specific invalidity issues before the PTAB. Thus, piecemeal appeals can be avoided by proceeding to trial in this litigation, which will decrease the burden on the courts and the parties (in every scenario except where the PTAB cancels every asserted patent and the Federal Circuit affirms its decision to do

so). In the interests of reaching a final resolution to the case as quickly as possible, this case presents a set of circumstances that counsel against granting a stay under the fourth factor.

In sum, all four factors weigh against granting a stay. Like the Apple case, "seeing the case to its conclusion maximizes judicial and party resources," and discourages gamesmanship in the timing of late filed CBM petitions. Accordingly, a stay of the Samsung litigation is also unwarranted and should be denied.

*Google Litigation (-435 case)*

Google also argues that all four factors weigh heavily in favor of staying this action for the duration of the PTAB proceedings. Smartflash opposes.

## (A) Whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial

*The Parties' Positions*

Google argues that the PTAB has already found five of the seven asserted patents more likely than not invalid, and it expects the PTAB to find the same in the pending decision on the other two. (Google Motion at 8, Dkt. No. 167 in 6:14-CV-435). The Court observes that on May 28, 2015, the PTAB instituted review of the '772 Patent as well. Google points to statistics as of December 31, 2014, showing that the PTAB has cancelled 100% percent of claims on which it instituted CBM review based on § 101 grounds and 85% of claims for reviews instituted on any grounds. (*Id.*) Google contends that the PTAB is unlikely to change its view about the validity of the asserted claims after further proceedings because § 101 is a question of law. (*Id.* at 9). Google asserts that the "likely cancellation of Smartflash's patents" is the ultimate simplification of issues because it will dispose of the entire litigation. (*Id.*) Moreover, Google argues that Apple will soon present claim construction and validity issues to the Federal Circuit that will impact all of the Smartflash litigation, which also favors a stay in this case. (*Id.* at 9–10).

Smartflash counters that because Google participated in the -448 case,[22] the Court's § 101 Order in that case may bind it for the previously asserted claims. (Smartflash -435 Response at 3, Dkt. No. 171 in 6:14-CV-435). Smartflash urges that even if estoppel does not apply, the Court may rely on its previous reasoning and will likely conclude that asserted claims in this case are valid under § 101. (*Id.*) According to Smartflash, *VirtualAgility* does not bar the Court from "merely adhering to its own already-made judicial conclusions," because the policy

---

[22] Google agreed to defend Samsung and the two entities share counsel.

of avoiding "'mini-trials' on invalidity issue issues" is not implicated. (*Id.* at 4 (citing *VirtualAgility*, F.3d at 1314)). Smartflash contends that the PTAB proceedings may never reach a final decision. (*Id.*) In Smartflash's view, if the -447 and -448 cases reach final judgment, collateral estoppel applies to the PTAB proceedings. (*Id.* (citing *B&B Hardware*, 135 S. Ct. at 1305; *Heck*, 512 U.S. at 493 n.10)). As Smartflash discussed in its Response to Samsung's Motion to Stay (Smartflash -448 Response at 9–10, Dkt. No. 498 in 6:13-CV-448), the prospect of simplification related to non-§ 101 petitions is unlikely because of the narrow CBM estoppel provisions. (Smartflash -435 Response at 5). According to Smartflash, the PTAB rejected almost 90% of Apple and Samsung's petitions on grounds other than § 101. (*Id.*)

*The Court's Analysis*

Google's arguments overlook the fact that the Court has already determined the § 101 issue as to six of the seven asserted patents concerning which it argues the PTAB could ultimately simplify. The Court already conducted its own analysis, and there is no "mini-trial" to be avoided. As to the seventh, recently issued '516 Patent, Google's argument that it can expect the PTAB to find the patent more likely than not invalid under § 101 is unavailing. As noted above, the Patent Office issued the '516 Patent in August 2014, two months after the Supreme Court issued the *Alice* decision. Therefore, whether the PTAB will institute CBM review on the '516 Patent is uncertain and the Court should not speculate about what the PTAB will or will not decide. *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1313 (Fed. Cir. 2014) (warning that when district courts speculate as to PTAB outcomes, it "create[s] serious practical problems.").

On balance, this factor is neutral.

**(B) Whether discovery is complete and whether a trial date has been set**

*The Parties' Positions*

Google argues that this case is still at an early stage:

> The majority of discovery has yet to occur. The parties have not completed electronically stored information production. No depositions have taken place. The document production deadline—July 3, 2015—is still two months away. The formal close of fact discovery—July 27, 2015—is nearly three months away. Expert discovery, none of which has taken place, will remain open for over four months, until September 11, 2015.

(Google Motion at 10, Dkt. No. 167 in 6:14-CV-435 (internal citations omitted)). Google further notes that the Court has not held the *Markman* hearing and that the dispositive and *Daubert* motion hearing is not for another eight months. (*Id.* at 10–11). Google also notes that trial is almost a year away.[23] (*Id.*) Google contends that the Court found that when the Apple and Samsung cases were in a similar "intermediate stage," this factor weighed in favor of granting a stay.[24] (*Id.*)

Smartflash responds that the parties and the Court have already expended significant resources through Google's participation in the Samsung litigation. (Smartflash -435 Response at 6, Dkt. No. 171 in 6:14-CV-435). Smartflash argues that much of the work that remains is a result of Google's own "dilatory actions in refusing to produce relevant discovery" in both this case and the -448 case. (*Id.*) Further, Smartflash contends that trial is set for March 28, 2016, "merely [eleven] months" away, around when the PTAB will issue decisions regarding the twelve instituted reviews. (*Id.*) However, Smartflash argues that trial will occur far in advance of any decision on the twenty remaining asserted claims. (*Id.*)

---

[23] The Court postponed the *Markman* hearing originally scheduled for May 14, 2015 to June 4, 2015 in order to give the Court time to consider the stay briefing.

[24] "Apple contends that the parties and Court will waste significant resources on depositions, claim construction briefing, expert reports and discovery, and summary judgment briefing if a stay is not granted. . . . This case is at an intermediate stage. It was filed ten months before Apple filed its Motion to Stay." (Memorandum and Opinion Denying Stay at 8, Dkt. No. 175 in 6:13-CV-447).

*The Court's Analysis*

Similar to when Apple filed its first Motion to Stay in the -447 case, this case is at an intermediate stage. A trial date has been set for March 2016, but substantial discovery has yet to occur. However, the Court must also consider whether Google acted with reasonable diligence in filing CBM petitions and a motion to stay. Prior to the Court's May 4, 2015 Order requiring briefing from Google on the stay issue, Google had not filed any petitions for CBM review or moved for a stay pending the resolution of CBM reviews filed by Apple or Samsung. Given Google's active participation in the Samsung litigation, Google's knowledge that Smartflash has alleged infringement of Google Play since May 2013, and Google's and Samsung's shared counsel, Google's delay seems dilatory. Although the Court previously found this factor favored a stay when the Apple litigation was similarly situated, concerns about Google's delay in filing any CBM petitions or motions to stay cause this factor to now only slightly favor a stay.[25]

**(C) Whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party**

*The Parties' Positions*

Google raises similar arguments as Apple and Samsung, asserting that Smartflash's only business is litigation, Smartflash does not compete with Google, and that money damages will sufficiently compensate Smartflash for any delay in the case. (Google Motion at 12, Dkt. No. 167 in 6:14-CV-435). Additionally, Google similarly argues that Smartflash's delay in filing suit against Google, even waiting a year after filing the case against Samsung involving Google products, shows it will not be prejudiced by a stay. (*Id.* at 12). Moreover, Google, like Samsung, also contends it will suffer prejudice if it is forced to litigate issues related to patent claims that the PTAB decided are more likely than not invalid. (*Id.* at 13).

---

[25] In light of Google's heavy involvement in the Samsung litigation and that Google contemplated filing petitions in November 2014 (discussed below), the reasons Google provided below for not filing any CBM petitions are not compelling. Since that time, while the briefing was pending, Google has filed five CBM petitions.

Google argues that it was not feasible to file PTAB petitions earlier in the case because Smartflash asserted one hundred patent claims. (*Id.*) According to Google, Smartflash waited to narrow asserted claims until it could see which CBM reviews the PTAB instituted. (*Id.*) Google contends that after Smartflash reduced the number of asserted claims to thirty-two on March 26, 2015, it could then reasonably begin preparing and filing CBM petitions. (*Id.* at 14). Moreover, Google asserts that Smartflash has to face a large number of CBM petitions only because of its own choice to assert different claims against different defendants. (*Id.*) According to Google, this is a foreseeable result of Smartflash's hedging litigation strategy. (*Id.*)

Smartflash responds again that splitting invalidity defenses cuts against any issue simplification. (Smartflash -435 Response at 7, Dkt. No. 171 in 6:14-CV-435). Smartflash argues that Google primarily seeks a stay to allow it and others to re-litigate an issue the court already decided with Google's participation. (*Id.*) Smartflash asserts that allowing Google, Apple, and Samsung to re-litigate issues at the PTAB undermines the design of the AIA to "establish a more efficient and streamlined patent system." (*Id.* (quoting H.R.Rep.No. 112–98, pt. 1, at 40 (2011), 2011 U.S.C.C.A.N. 67, 69)). Further, Smartflash asserts that a stay will give Google the tactical advantage it has sought all along through "frivolous" discovery objections, and allowing Google to drive up costs through filing an "abusive" number of CBM petitions. (*Id.*) In Smartflash' view, the "mountains" of "iterative" CBM petitions against the same claims reflect a concerted effort by the "Defendant Group" to drain Smartflash's resources while resolving no actual issues. Moreover, Smartflash argues that Google's two-year delay in filing CBM petitions after learning of the alleged infringement of Google Play disfavors a stay. (*Id.*) According to Smartflash, Google considered filing petitions as early as last November. (*Id.* at 9 (citing Nov. 3, 2014 Email from Google's Counsel to Smartflash's Counsel, Dkt. No. 171, Ex. B)).

Moreover, Smartflash asserts that the "flurry of CBM petitions filed as a direct result" of the Court's May 4 Order for briefing shows that Google only seeks delay and tactical advantages. (*Id.*) Smartflash points out that before the Court's Order, no petition had been filed for the '516 Patent. (*Id.*) Smartflash contends that Google only filed its petitions when it did in an attempt to support its efforts to delay the case. (*Id.*) Additionally, as it did with the other Defendants, Smartflash asserts its undue prejudice arguments related to inherent prejudice from a stay and effects on its licensing efforts. (*Id.* at 10.)

*The Court's Analysis*

Again, Smartflash has not demonstrated that it will suffer undue prejudice from a stay. It is somewhat disturbing that Google—who is well versed in the patents-in-suit, accused products, the Samsung litigation, and Samsung's PTAB proceedings—had to be ordered by the Court to discuss staying this case. It is quite possible that Google will simply use the stay to file other PTAB proceedings. Nevertheless, staying the case now does not give Google the same clear tactical advantage as Defendants in the Apple and Samsung cases. Even though the Court decided many of the same issues for the same patents, Google itself has not litigated the invalidity grounds in the Court such that the PTAB provides a second chance at litigation.[26] On balance, this factor weighs against a stay.

**(D) Whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court**

*The Parties' Positions*

Google makes the same basic arguments as Apple and Samsung for this factor: the PTAB is likely to eliminate the need for further litigation and no extraordinary circumstances exist here. (Google Motion at 15, Dkt. No. 167 in 6:14-CV-435).

---

[26] The Court notes that the same counsel are involved in both the Samsung and Google cases, and Google agreed to defend Samsung.

Smartflash responds that the Court has already expended substantial resources on all but one of the patents-in-suit. (Smartflash -435 Response at 10, Dkt. No. 171 in 6:14-CV-435). Smartflash asserts that Google has caused additional burden because Smartflash previously agreed to allow Google to consolidate this case with the Samsung litigation. (*Id.*) According to Smartflash, Google had concealed its participation in the Samsung litigation, but it was not willing to accommodate the -448 schedule without causing "substantial delay." (*Id.*)

*The Court's Analysis*

The opportunity remains to meaningfully reduce the overall burden on the Court and the parties with a stay. Although there are overlapping issues with the earlier Apple and Samsung cases, the parties and the Court still have substantial work to do in this case. Accordingly, this factor weighs in favor of a stay.

In sum, the first factor is neutral, the second and third factors slightly favor a stay, and the fourth factor favors a stay. Accordingly, granting a stay is warranted in Google's case.

***Amazon Litigation (-992 case)***

Amazon contends that all four factors weigh heavily in favor of a stay. Smartflash disagrees.

**(A) Whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial**

Amazon argues that it is very likely that the PTAB will ultimately find many of the claims asserted in the other litigations unpatentable under § 101, and that many of those terms are asserted in the Amazon Litigation. (Amazon Motion at 3–4, Dkt. No. 37 in 6:14-CV-992). As did Google, Amazon points out that the PTAB has cancelled 100% of claims on which it has instituted reviews under § 101. (*Id.* at 4). Amazon asserts that courts stay cases pending CBM review "almost as a matter of course" when even just a subset of claims is under review. (*Id.* (citing *Versata Software, Inc. v. Callidus Software*, 771 F.3d 1368, 1371 (Fed. Cir. 2014) ("Stays can be warranted even when a CBM proceeding does not address all asserted patents, claims, or invalidity defenses."); *NFC Tech. LLC*, 2015 WL 1069111 at *7)). Moreover, Amazon contends that the similarities in the patents also make it highly likely that the PTAB will institute review on '516 Patent, which still awaits an institution decision.[27] (*Id.* at 4–6).

**(B) Whether discovery is complete and whether a trial date has been set**

Amazon points out that this case, which was filed on December 19, 2014, is in its very early stages—no discovery has occurred and no trial date or schedule has been set. (Amazon Motion at 7). Thus, Amazon concludes that this factor heavily favors a stay. (*Id.* (citing *VirtualAgility*, 759 F.3d at 1317)).

**(C) Whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party**

---

[27] Smartflash's brief does not respond to each factor, so its arguments are summarized below Amazon's discussion of the factors.

For this factor, Amazon essentially raises the same arguments as the other defendants: Smartflash is not a competitor and does not make products; Smartflash can be fully restored through monetary relief; and Smartflash has not moved for a preliminary injunction. (Amazon Motion at 8). Amazon further argues that institution of CBM review more greatly impacts Smartflash's licensing efforts than any stay would. (*Id.* (citing *Benefit Funding Sys. LLC v. Advance Am. Cash Advance Ctrs. Inc.*, 767 F.3d 1383, 1385 (Fed. Cir. 2014))). Amazon contends that, given the case's early stage, a stay will not give it a clear tactical advantage. (*Id.* at 9).

**(D) Whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court**

Amazon argues that the Court must give effect to the PTAB's determination, which, according to Amazon, is nearly certain to find the patents invalid. (Amazon Motion at 9). Further, Amazon argues that a stay could avoid costly and unnecessary litigation on causes of action that "will be mooted" by final PTAB determinations. (*Id.*) Additionally, Amazon asserts that even if some claims survive CBM review, the Court will benefit from the PTAB's review. (*Id.*)

Smartflash responds to Amazon's analysis of the factors by arguing that a ruling on a stay in this case is premature. (Smartflash -992 Response at 2, Dkt. No. 38 in 6:14-CV-992). Smartflash contends that it has not elected claims to assert, that Amazon had not elected invalidity defenses, and that the PTAB has not made institution decisions for one of the patents. (*Id.*) Smartflash recognizes that if the PTAB found all challenged claims invalid under § 101, issues would likely be simplified, but according to Smartflash, that outcome is unlikely based on the Court's reasoning on the issue in the -447 and -448 cases. (*Id.* at 3). Moreover, Smartflash again contends that *VirtualAgility* is distinguishable from this scenario because the Court has

already undertaken a § 101 analysis for the patents-in-suit and there is no "mini-trial" or collateral attack to avoid. (*Id.* at 3–4).

Further, Smartflash maintains that a final judgment from the Court may collaterally estop the PTAB proceedings. (*Id.*) Smartflash notes that findings of "not invalid" in district courts have not bound the PTO in reexamination, but asserts that this was because of different applicable standards—clear and convincing evidence in courts compared to a preponderance of the evidence at the PTO. (*Id.* at 5 (citing *Fresenius USA, Inc. v. Baxter Int'l*, 721 F.3d 1330, 1343-44 (Fed. Cir. 2013))). Smartflash argues that in "the post-*Alice* § 101 world, substantial authority supports the conclusion that the PTO and district courts no longer apply different standards at all." (*Id.* (citing Apple's Motion for § 101 JMOL, Dkt. No. 550 in 6:13-CV-447)). Smartflash additionally contends that even if estoppel does not apply, Federal Circuit reasoning from an appeal in the Apple or Samsung litigation will bind both the PTAB and the Court under *stare decisis* such that current PTAB proceedings are duplicative and a waste of resources. (*Id.*)

The Amazon case is in its very early stages and has only recently had its scheduling conference. Substantial opportunities remain for cost-savings and issue simplification. As previously noted, Smartflash will not be unduly prejudiced by a stay. Moreover, there is no evidence that Amazon has known of its alleged infringement for more than a few months. Smartflash's arguments about whether a stay is premature run counter to the policies underlying Congress's intended purpose of CBM review. Accordingly, staying the Amazon litigation in its present stage is warranted.

## **CONCLUSION**

A stay is unwarranted in the Apple and Samsung litigation, and a stay is warranted in the Google and Amazon litigation. Accordingly,

(1) Apple's Motion To Stay Litigation Pending Covered Business Method Review (Dkt. No. 546 in 6:13-CV-447) is **DENIED**;

(2) Samsung's Renewed Motion to Stay Litigation Pending Covered Business Method (Dkt. No. 495 in 6:13-CV-448) is **DENIED**;

(3) Google Inc.'s Response to the Court's May 4, 2015 Order  and Motion to Stay Litigation Pending Covered Business Method Review (Dkt. No. 164 & Dkt. No. 167 in 6:14-CV-435) is **GRANTED**; and

(4) The Amazon litigation (Case No. 6:14-CV-992) is **STAYED** until otherwise ordered by the Court.

**So ORDERED and SIGNED this 29th day of May, 2015.**


_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

## **APPENDIX A – SUMMARY OF DATES**

- May 29, 2013 – Smartflash filed suit against Apple (6:13-CV-447) and Samsung (6:13-CV-448);

- March 28 and April 3, 2014 - Apple filed twelve CBM petitions against every patent in the Apple and Samsung cases, raising invalidity defenses on §§ 102 and 103 grounds;

- April 3, 2014 - Apple filed a motion to stay pending CBM review;

- May 7, 2014 – Smartflash filed suit against Google (6:14-CV-435);

- May 15, 2014 – Samsung filed a motion to stay pending CBM review based on Apple's motion and CBM review petitions;

- July 8, 2014 – The Court denied Apple's motion to stay pending CBM review without prejudice;

- September 26, 2014 - Samsung filed ten petitions for CBM review of the patents-in-suit, asserting an invalidity defense on § 101 grounds for the first time;

- September 30, 2014 – PTAB denied institution of CBM review for the majority of Apple's petitions and instituted on a few claims across four of the asserted patents;

- October 24, 2014 – Apple and Samsung filed identical motions for summary judgment for invalidity on § 101 grounds;

- October 30, November 3, 24 & 25, 2014 – Apple filed nine additional CBM review petitions, six of them raising § 101 grounds;

- November 4, Smartflash § 101 Response is filed.

- December 2, 2014 – The Court held a joint dispositive/*Daubert* motions hearing in the Apple and Samsung cases;

- December 29, 2014 – Smartflash filed suit against Amazon (6:14-CV-992)

i

- January 6, 2015 – The Court held a joint pretrial conference in the Apple and Samsung cases;

- January 15, 2015 - Samsung filed an additional CBM petition seeking review of the '772 patent on § 101 grounds;

- January 21, 2015 – The Court issued a Report and Recommendation finding that the all asserted patents in the Apple and Samsung were valid under § 101;

- January 26, 2015 – The Court held a second pretrial conference in the Apple case, splitting it for individual trial;

- February 4, 2014 – The Court held a final pretrial conference in the Apple case;

- February 12, 2015 – Smartflash narrowed asserted patents against Apple to four claims from three patents;

- February 13, 2015 – The Court issued an Order adopting the Court's earlier Report and Recommendation to deny the motions for summary judgment of invalidity under § 101 in the Apple and Samsung cases;

- February 16-24, 2015 – The Court held trial in *Smartflash v. Apple*;

- February 24, 2015 – A jury returned a verdict in favor of Smartflash at the conclusion of the *Smartflash v. Apple* trial;

- February 25, 2015 – Smartflash filed suit against Apple (6:15-CV-145) again

- March 30 and April 2, 2015 – The PTAB instituted proceedings on all of the asserted claims from four of the asserted patents in the Samsung case under § 101;

- April 30, 2015 – Apple files four CBM review petitions

- May 1, 2015 – Deadline for Apple/Smartflash to file post-trial motions

- May 5, 2015 – Initial conference call in the PTAB proceedings on two instituted claims from September petitions

- May 6–8, 2015 – Apple files six CBM review petitions against Smartflash

- May 6–8, 2015 – Google files three additional CBM review petitions against Smartflash

- May 11, 2015 – Apple files another CBM review petition against Smartflash

- May 13, 2015 – Google files another CBM review petition against Smartflash

- May 16, 2015 – Google files another CBM review petition against Smartflash

- May 28, 2015 – PTAB institutes decision for the '772 Patent

- July 1, 2015 – Post-trial hearing for Apple case

- August 3, 2015 – Trial date for Samsung case

- December 22, 2015 – *Smartflash v. Google* summary judgment hearing scheduled

- March 28, 2016 – Trial date for Google case

- March 30 and April 2, 2016 – The PTAB's deadline for final decisions on first round of instituted CBM reviews

- May 28, 2016 – The PTAB's deadline final decision on the '772 Patent

# ADDENDUM B

Section 18 of the Leahy-Smith America Invents Act,
Pub. L. No. 112-29, 125 Stat. 284 (2011)

H. R. 1249

# One Hundred Twelfth Congress
## of the
## United States of America

### AT THE FIRST SESSION

*Begun and held at the City of Washington on Wednesday,*
*the fifth day of January, two thousand and eleven*

## An Act

To amend title 35, United States Code, to provide for patent reform.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE; TABLE OF CONTENTS.**

(a) SHORT TITLE.—This Act may be cited as the "Leahy-Smith America Invents Act".

(b) TABLE OF CONTENTS.—The table of contents for this Act is as follows:

Sec. 1. Short title; table of contents.
Sec. 2. Definitions.
Sec. 3. First inventor to file.
Sec. 4. Inventor's oath or declaration.
Sec. 5. Defense to infringement based on prior commercial use.
Sec. 6. Post-grant review proceedings.
Sec. 7. Patent Trial and Appeal Board.
Sec. 8. Preissuance submissions by third parties.
Sec. 9. Venue.
Sec. 10. Fee setting authority.
Sec. 11. Fees for patent services.
Sec. 12. Supplemental examination.
Sec. 13. Funding agreements.
Sec. 14. Tax strategies deemed within the prior art.
Sec. 15. Best mode requirement.
Sec. 16. Marking.
Sec. 17. Advice of counsel.
Sec. 18. Transitional program for covered business method patents.
Sec. 19. Jurisdiction and procedural matters.
Sec. 20. Technical amendments.
Sec. 21. Travel expenses and payment of administrative judges.
Sec. 22. Patent and Trademark Office funding.
Sec. 23. Satellite offices.
Sec. 24. Designation of Detroit satellite office.
Sec. 25. Priority examination for important technologies.
Sec. 26. Study on implementation.
Sec. 27. Study on genetic testing.
Sec. 28. Patent Ombudsman Program for small business concerns.
Sec. 29. Establishment of methods for studying the diversity of applicants.
Sec. 30. Sense of Congress.
Sec. 31. USPTO study on international patent protections for small businesses.
Sec. 32. Pro bono program.
Sec. 33. Limitation on issuance of patents.
Sec. 34. Study of patent litigation.
Sec. 35. Effective date.
Sec. 36. Budgetary effects.
Sec. 37. Calculation of 60-day period for application of patent term extension.

**SEC. 2. DEFINITIONS.**

In this Act:

(1) DIRECTOR.—The term "Director" means the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office.

H. R. 1249—46

(C) an analysis of the legal issues, if any, that arise from such virtual marking; and

(D) an analysis of the deficiencies, if any, of such virtual marking.

(b) FALSE MARKING.—

(1) CIVIL PENALTY.—Section 292(a) of title 35, United States, Code, is amended by adding at the end the following: "Only the United States may sue for the penalty authorized by this subsection.".

(2) CIVIL ACTION FOR DAMAGES.—Subsection (b) of section 292 of title 35, United States Code, is amended to read as follows:

"(b) A person who has suffered a competitive injury as a result of a violation of this section may file a civil action in a district court of the United States for recovery of damages adequate to compensate for the injury.".

(3) EXPIRED PATENTS.—Section 292 of title 35, United States Code, is amended by adding at the end the following:

"(c) The marking of a product, in a manner described in subsection (a), with matter relating to a patent that covered that product but has expired is not a violation of this section.".

(4) EFFECTIVE DATE.—The amendments made by this subsection shall apply to all cases, without exception, that are pending on, or commenced on or after, the date of the enactment of this Act.

**SEC. 17. ADVICE OF COUNSEL.**

(a) IN GENERAL.—Chapter 29 of title 35, United States Code, is amended by adding at the end the following:

**"§ 298. Advice of counsel**

"The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent.".

(b) CONFORMING AMENDMENT.—The table of sections for chapter 29 of title 35, United States Code, is amended by adding at the end the following:

"298. Advice of counsel.".

**SEC. 18. TRANSITIONAL PROGRAM FOR COVERED BUSINESS METHOD PATENTS.**

(a) TRANSITIONAL PROGRAM.—

(1) ESTABLISHMENT.—Not later than the date that is 1 year after the date of the enactment of this Act, the Director shall issue regulations establishing and implementing a transitional post-grant review proceeding for review of the validity of covered business method patents. The transitional proceeding implemented pursuant to this subsection shall be regarded as, and shall employ the standards and procedures of, a post-grant review under chapter 32 of title 35, United States Code, subject to the following:

(A) Section 321(c) of title 35, United States Code, and subsections (b), (e)(2), and (f) of section 325 of such title shall not apply to a transitional proceeding.

H. R. 1249—47

(B) A person may not file a petition for a transitional proceeding with respect to a covered business method patent unless the person or the person's real party in interest or privy has been sued for infringement of the patent or has been charged with infringement under that patent.

(C) A petitioner in a transitional proceeding who challenges the validity of 1 or more claims in a covered business method patent on a ground raised under section 102 or 103 of title 35, United States Code, as in effect on the day before the effective date set forth in section 3(n)(1), may support such ground only on the basis of—

(i) prior art that is described by section 102(a) of such title of such title (as in effect on the day before such effective date); or

(ii) prior art that—

(I) discloses the invention more than 1 year before the date of the application for patent in the United States; and

(II) would be described by section 102(a) of such title (as in effect on the day before the effective date set forth in section 3(n)(1)) if the disclosure had been made by another before the invention thereof by the applicant for patent.

(D) The petitioner in a transitional proceeding that results in a final written decision under section 328(a) of title 35, United States Code, with respect to a claim in a covered business method patent, or the petitioner's real party in interest, may not assert, either in a civil action arising in whole or in part under section 1338 of title 28, United States Code, or in a proceeding before the International Trade Commission under section 337 of the Tariff Act of 1930 (19 U.S.C. 1337), that the claim is invalid on any ground that the petitioner raised during that transitional proceeding.

(E) The Director may institute a transitional proceeding only for a patent that is a covered business method patent.

(2) EFFECTIVE DATE.—The regulations issued under paragraph (1) shall take effect upon the expiration of the 1-year period beginning on the date of the enactment of this Act and shall apply to any covered business method patent issued before, on, or after that effective date, except that the regulations shall not apply to a patent described in section 6(f)(2)(A) of this Act during the period in which a petition for postgrant review of that patent would satisfy the requirements of section 321(c) of title 35, United States Code.

(3) SUNSET.—

(A) IN GENERAL.—This subsection, and the regulations issued under this subsection, are repealed effective upon the expiration of the 8-year period beginning on the date that the regulations issued under to paragraph (1) take effect.

(B) APPLICABILITY.—Notwithstanding subparagraph (A), this subsection and the regulations issued under this subsection shall continue to apply, after the date of the

repeal under subparagraph (A), to any petition for a transitional proceeding that is filed before the date of such repeal.

(b) REQUEST FOR STAY.—

(1) IN GENERAL.—If a party seeks a stay of a civil action alleging infringement of a patent under section 281 of title 35, United States Code, relating to a transitional proceeding for that patent, the court shall decide whether to enter a stay based on—

(A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;

(B) whether discovery is complete and whether a trial date has been set;

(C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and

(D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

(2) REVIEW.—A party may take an immediate interlocutory appeal from a district court's decision under paragraph (1). The United States Court of Appeals for the Federal Circuit shall review the district court's decision to ensure consistent application of established precedent, and such review may be de novo.

(c) ATM EXEMPTION FOR VENUE PURPOSES.—In an action for infringement under section 281 of title 35, United States Code, of a covered business method patent, an automated teller machine shall not be deemed to be a regular and established place of business for purposes of section 1400(b) of title 28, United States Code.

(d) DEFINITION.—

(1) IN GENERAL.—For purposes of this section, the term "covered business method patent" means a patent that claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service, except that the term does not include patents for technological inventions.

(2) REGULATIONS.—To assist in implementing the transitional proceeding authorized by this subsection, the Director shall issue regulations for determining whether a patent is for a technological invention.

(e) RULE OF CONSTRUCTION.—Nothing in this section shall be construed as amending or interpreting categories of patent-eligible subject matter set forth under section 101 of title 35, United States Code.

### SEC. 19. JURISDICTION AND PROCEDURAL MATTERS.

(a) STATE COURT JURISDICTION.—Section 1338(a) of title 28, United States Code, is amended by striking the second sentence and inserting the following: "No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights. For purposes of this subsection, the term 'State' includes any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the United States Virgin Islands, American Samoa, Guam, and the Northern Mariana Islands.".

(b) COURT OF APPEALS FOR THE FEDERAL CIRCUIT.—Section 1295(a)(1) of title 28, United States Code, is amended to read as follows:

# CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of June, 2015, two copies of the foregoing document were served on the following counsel by overnight delivery, and one copy was provided by e-mail:

Christopher Stewart
cstewart@caldwellcc.com
Daniel Pearson
dpearson@caldwellcc.com
Hamad Hamad
hhamad@caldwellcc.com
Jason Cassady
jcassady@caldwellcc.com
Jason McManis
jmcmanis@caldwellcc.com
John Curry
acurry@caldwellcc.com
John Summers
jsummers@caldwellcc.com
Justin Nemunaitis
jnemunaitis@caldwellcc.com
Warren McCarty III
wmccarty@caldwellcc.com
Bradley Caldwell
bcaldwell@caldwellcc.com
Caldwell Cassady & Curry, PC
2101 Cedar Springs Rd., Suite 1000
Dallas, TX 75201
214-888-4848

Thomas Ward
tjw@wsfirm.com
Thomas Ward Jr.
jw@wsfirm.com
Claire Abernathy
claire@wsfirm.com
Ward, Smith & Hill, PLLC
PO Box 1231
1127 Judson Rd., Suite 220
Longview, TX 75606
903-757-6400

/s/ Mark A. Perry

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 6,043 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).  This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, 14-point.

/s/ Mark A. Perry